| | |
|---|---|
| **TEYLLON SOUZA VIEIRA**<br>    Petitioner,<br><br>v.<br><br>**MARY DE ANDA-YBARRA**,<br>Field Office Director, ICE El Paso Field Office;<br>**TODD LYONS**, Acting Director of<br>U.S. Immigration and Customs Enforcement<br>**KRISTI NOEM**, Secretary of the U.S.<br>Department of Homeland Security; **ICE**<br>**FACILITY ADMINISTRATOR** (name currently<br>unknown) at Camp East Montana Detention Center;<br>and **PAMELA BONDI**,<br>Attorney General of the United States,<br><br>in their official capacities<br><br>    Respondents. | Civil Case No.: 3:25-cv-00432 |

## PETITION FOR WRIT OF HABEAS CORPUS

## INTRODUCTION

1. Teyllon Souza Vieira (hereinafter referred to as "Teyllon," "Mr. Souza Vieira," or "Petitioner") seeks to file this Petition for Writ of Habeas Corpus with the Court.

2. Mr. Souza Vieira is a Brazilian citizen who entered the U.S. on August 17, 2022. Before detention, Mr. Souza Vieira was residing at 12 Rolling Green Drive, 12L, Milford, MA 01757. He is currently detained at the Camp East Montana Detention Center, located at 6920 Digital Road, El Paso, Texas, 79936.

3. On February 18, 2025, a Form I-360, Petition for Special Immigrant Juvenile ("SIJ") filed by Mr. Souza Vieira was approved by the U.S. Citizenship and Immigration Services ("USCIS"). The approval granted him deferred action status, meaning that he

1

was authorized to remain in the United States while waiting for the visa bulletin to file for his adjustment of status and become a Legal Permanent Resident.

4. Based on the approval of his Form I-360 and his granted deferred action, Petitioner filed a Motion to Terminate Proceedings with the Immigration Court, which was granted on May 6, 2025. The Department of Homeland Security ("DHS") had an opportunity to oppose the motion or appeal the decision, but they did not.

5. Only a few months after his case was terminated, on September 11, 2025, Mr. Souza Vieira was detained. He has since been transferred to Camp East Montana Detention Center in El Paso, Texas.

6. Petitioner's detention violates federal law, as well as the Fifth Amendment of the United States Constitution.

7. Accordingly, to vindicate Petitioner's statutory and constitutional regulatory rights, this Court should grant the instant petition for a writ of habeas corpus. Mr. Souza Vieira requests that this Court immediately release him from detention, also enjoining Respondents from re-detaining him unless there are changes in the circumstances that would justify detention.

## JURISDICTION

8. This action arises under the Constitution of the United States and the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq*.

9. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), and 28 U.S.C. § 1331 (federal question).

10. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 *et. seq.*, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the All Writs Act, 28 U.S.C. § 1651.

## VENUE

11. Venue is proper in this District because Respondents are officers, employees, or agencies of the United States, and the Petitioner is currently detained within the jurisdiction of this District. 28 U.S.C. § 2241.

## PARTIES

12. Petitioner is a Brazilian citizen who entered the U.S. on August 17, 2022. He has never left the country since. He has a Form I-360 approval as a Special Immigrant Juvenile, with deferred action. He is detained at Camp East Montana Detention Center, in El Paso, Texas, and is in custody and under the direct control of Respondents and their agents.

13. Respondent, Mary de Anda-Ybarra, is sued in her official capacity as the Field Office Director of U.S. Immigration and Customs Enforcement ("ICE") in El Paso, Texas. She is a legal custodian of Petitioner, with authority over decisions regarding his detention and release. Because Petitioner is confined in an ICE facility within her jurisdiction, she is the local official directly responsible for his custody.

14. Respondent, Todd Lyons, is sued in his official capacity as the Acting Director of U.S. Immigration and Customs Enforcement. He is responsible for the overall administration, supervision, and enforcement of immigration detention and removal

operations nationwide, including policies governing the custody and release of noncitizens. Respondent Lyons is therefore a legal custodian of Petitioner.

15. Respondent, Kristi Noem, is sued in her official capacity as the Secretary of the U.S. Department of Homeland Security ("DHS"). She is responsible for the implementation and enforcement of the Immigration and Nationality Act and oversees ICE, the component agency that administers Petitioner's detention. Respondent Noem is therefore a legal custodian of Petitioner.

16. Respondent, ICE Facility Administrator (name currently unknown), is the Warden and/or immediate custodian at the Camp East Montana Detention Center in El Paso, Texas. The Facility Administrator is the Petitioner's immediate custodian and sued in his or her official capacity.

17. Pamela Bondi, Attorney General of the United States, is sued in her official capacity and as the legal representative of the U.S. government.

**STATEMENT OF FACTS**

18. Mr. Souza Vieira is a Brazilian citizen who entered the U.S. on August 17, 2022. Before detention, Mr. Souza Vieira was residing at 12 Rolling Green Drive, 12L, Milford, MA 01757. He is currently detained at the Camp East Montana Detention Center, located at 6920 Digital Road, El Paso, Texas, 79936.

19. Following Mr. Souza Vieira's entry into the United States, he was detained under Section 236 of the Immigration and Nationality Act ("INA"). *See* Ex. A, Warrant for Arrest of Alien. Petitioner was then placed in removal proceedings and charged under 212(a)(6)(A)(i) of the INA, as an "alien present in the United States without being

admitted or paroled, or who arrived in the United States at any time and place other than as designated by the Attorney General." *See* Ex B, Notice to Appear.

20. After being placed in removal proceedings, Petitioner received an Order of Release on Recognizance in accordance with section 236 of the INA. *See* Ex. C, Order of Release on Recognizance. The order states that the release occurred "[i]n accordance with section 236 of the Immigration and Nationality Act and the applicable provisions of Title 8 of the Code of Federal Regulations." *Id.*

21. On September 5, 2024, the Worcester Probate and Family Court issued a Judgment of Dependency pursuant to Massachusetts G.L. c. 119 §39M, stating that the "Applicant is dependent upon the Court for his care and protection; reunification with Applicant's mother is not viable due to abuse, neglect, and abandonment (See MGL Chapter 119 §39M(a)); it is not in the Applicant's best interest to be returned to Brazil; and it is not in the Applicant's best interest to remain in the United States." *See* Ex. D, Copy of Judgment of Dependency. Based on this order, Petitioner filed Form I-360 with USCIS, which was granted on February 18, 2025. *See* Ex E, Copy of I-360 Approval Notice.

22. The approval of Form I-360 granted Petitioner deferred action status, meaning that he was authorized to remain in the United States while waiting for the visa bulletin to file for his adjustment of status and become a Legal Permanent Resident. *See* Ex. E, I-360 Approval Notice.

23. Based on this approval, Petitioner's eligibility for adjustment of status, and the deferred action that was granted to him, Petitioner filed a Motion to Terminate proceedings before the Immigration Court, which was granted on May 6, 2025. DHS

could have filed an opposition, filed a motion to reconsider with the Immigration Court, or appealed the decision, but they did not. The decision became final, and Petitioner's removal proceedings were terminated.

24. On September 11, 2025, Mr. Souza Vieira was detained by Immigration and Customs Enforcement ("ICE"). He was suddenly transferred out of state to Camp East Montana Detention Center, where he remains detained.

25. Since his detention, DHS has yet to file any documents attempting to reopen his case before Immigration Court, and the agency has not yet submitted any documents related to his detention.

26. Petitioner has requested a bond hearing before the Immigration Court, which was scheduled to take place on September 25, 2025. The hearing was cancelled because of the Immigration Judge's unavailability and will be rescheduled, but the Immigration Judge indicated that the motion for bond would be denied based on *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). Based on recent decisions by the Board of Immigration Appeals, especially *Matter of Yajure Hurtado,* it is more than likely that the Immigration Judge will deny jurisdiction over Petitioner's bond case and allow the government to continue detaining Petitioner indefinitely without an opportunity for an independent judge to analyze his custody.

27. The reason for Petitioner's detention remains unclear, especially as he did not have an opportunity to be heard by an Immigration Judge to consider the reasons for his detention. Petitioner is also not tied to any reasonably foreseeable removal, as he has a deferred action granted, and his removal proceedings were recently terminated. Petitioner has only lived in Massachusetts while in the United States, where his legal

counsel is also physically present. Transfer of Petitioner to Massachusetts will allow her to receive appropriate legal representation, and to avoid potential illegal measures by the government due to incorrect screenings, as recently reported by the press.[1]

28. Petitioner's detention violates the Fifth Amendment of the United States Constitution and federal law. Petitioner is being detained without even having an opportunity to have a bond hearing, in a facility that is reported to have violated several human rights and failed to provide minimum conditions to their inmates.[23]

**<u>LEGAL FRAMEWORK</u>**

29. The Immigration and Nationality Act (INA) establishes the statutory framework governing the entry, presence, and removal of noncitizens in the United States. Regulations promulgated by the agencies charged with enforcing the INA set forth specific procedures for classifying noncitizens. When a noncitizen arrives at the border seeking entry into the United States, they are deemed an "applicant for admission." The INA defines several grounds of "inadmissibility." For example, a noncitizen who arrives at a port of entry without being admitted or paroled – such as Petitioner – may be found inadmissible pursuant to 8 U.S.C. § 1182(a)(6)(A)(i).

30. Under 8 U.S. Code § 1225, "An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been

---

[1] Patrick Smith & Gary Grumbach, *A Man Was Sent to El Salvador Due to 'Administrative Error' Despite Protected Legal Status*, NBC News, Apr. 1, 2025, available at https://www.nbcnews.com/news/us-news/man-was-sent-el-salvador-due-administrative-error-protected-legal-stat-rcna199010.

[2] MacMillan, Douglas; Samuel Oakford; N. Kirkpatrick; Aaron Schaffer. *60 violations in 50 days: Inside ICE's giant tent facility at Ft. Bliss.* THE WASHINGTON POST, 16 Sept. 2025.

[3] Kristian Jaime, *ICE Finds 60 Violations at Fort Bliss Migrant Facility in Texas.* EL PASO TIMES, 17 Sept. 2025, available at:https://www.elpasotimes.com/story/news/immigration/2025/09/17/ice-finds-60-violations-at-fort-bliss-migrant-facility-in-texas/86199672007/

interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission." Applicants for admission are among the individuals who can be placed in expedited removal, in which case they are subject to mandatory detention. INA § 235(b)(1)(B)(i)(IV).

31. If an applicant for admission is not placed in expedited removal proceedings under INA § 235 or is later placed in removal proceedings under INA § 240, detention is no longer mandatory. In these cases, noncitizens are sometimes released from custody and allowed to remain in the United States for the duration of their proceedings. 8 U.S. Code § 1226 (a).

32. Recently, however, Immigration Courts have shifted their long-standing interpretation, holding that they lack jurisdiction to conduct custody redeterminations for individuals who were placed in proceedings upon arrival, later released into the United States, and then detained years afterward for a different reason. Recent decisions by the Board of Immigration Appeals ("BIA") have stripped Immigration Judges of jurisdiction over these cases. *See Matter of Q. LI*, 29 I&N Dec. 66 (BIA 2025); *also Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). The latter decision is based on a position that every individual who unlawfully entered the U.S. is an "applicant for admission."

33. The recent interpretation by the BIA, which was adopted after a novel interpretation of the law by DHS, violates the Fifth Amendment, and is also contrary "to the plain text of the statute and the overall statutory scheme." *Aguiriano Romero v. Hyde*, No. 25-cv-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *also Diaz Martinez v. Hyde*, — F. Supp. 3d —, 2025 WL 2084238 (D. Mass. July 24, 2025); *see also,*

*e.g.*, *Rodriguez Vazquez v. Bostock*, — F. Supp. 3d —, 2025 WL 1193850 (W.D. Wash. Apr. 24, 2025) (holding same); *Gomes v. Hyde*, 2025 WL 1869299 (D. Mass. July 7, 2025) (same); *Garcia v. Hyde*, Civ. No. 25-11513 (D. Mass. July 14, 2025) (same); *Rosado v. Bondi*, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025) (same), *report and recommendation adopted without objection*, 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Lopez Benitez v. Francis*, — F. Supp. 3d —, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025) (same); *dos Santos v. Lyons*, 2025 WL 2370988 (D. Mass Aug. 14, 2025) (same); *Aguilar Maldonado v. Olson*, 2025 WL 2374411 (D. Minn. Aug. 15, 2025) (same); *Escalante v. Bondi*, 2025 WL 2212104 (D. Minn. July 31, 2025) (granting preliminary relief after positively weighing likelihood of success), *report and recommendation adopted sub nom. O. E. v. Bondi*, 2025 WL 2235056 (D. Minn. Aug. 4, 2025); *Arrazola-Gonzalez v. Noem*, 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025) (granting individualized bond hearings on *ex parte* motion for temporary restraining order after finding likelihood of success); *Garcia Jimenez v. Kramer*, 2025 WL 2374223 (D. Neb. Aug. 14, 2025) (granting relief from stay of bond order pending BIA appeal); *Mayo Anicasio v. Kramer*, 2025 WL 2374224 (D. Neb. Aug. 14, 2025) (same); *Rodrigues De Oliveira v. Joyce*, 2025 WL 1826118 (D. Me. July 2, 2025) (recognizing disagreement as to the detention statutes and granting habeas petition on due process grounds). *But see Pena v. Hyde*, 2025 WL 2108913 (D. Mass. July 28, 2025).

<u>**CLAIMS FOR RELIEF**</u>

<u>**COUNT ONE**</u>

<u>**Violation of the Immigration and Nationality Act (INA)**</u>

34. As mentioned, the Immigration and Nationality Act (INA) establishes the statutory framework governing the entry, presence, and removal of noncitizens in the United States. Regulations promulgated by the agencies charged with enforcing the INA set forth specific procedures for classifying noncitizens.

35. Mr. Souza Vieira was detained at the border, but he was neither placed into expedited removal proceedings nor held pending the outcome of such proceedings. The record reflects that, on August 17, 2022, Mr. Souza Vieira was served with a Notice to Appear and placed in removal proceedings pursuant to 8 U.S.C. § 1229. Petitioner was arrested and released explicitly under section 236 of the INA, referred here as 8 U.S.C. § 1226.

36. Nonetheless, Mr. Souza Vieira has been detained – without any clear rationale provided – and he will very likely be denied an opportunity to have a bond hearing before the immigration court based on a novel interpretation by DHS and DOJ that all individuals who entered the United States unlawfully are considered to be "applicants for admission" and therefore subject to mandatory detention. This includes individuals who have been in the United States for several years.

37. Indeed, mandatory detention for all applicants has only been the official policy of the Department of Homeland Security ("DHS") since July 8, 2025, when Acting Director of U.S. Immigration and Customs Enforcement, Todd M. Lyons, issued an internal memorandum explaining that the agency had "revisited its legal position."[4] *See Martinez v. Hyde*, No. CV 25-11613-. BEM, 2025 WL 2084238..

---

[4] The existence of the memorandum was first reported by the Washington Post on July 14, 2025. Maria Sacchetti & Carol D. Leonnig, ICE declares millions of undocumented immigrants ineligible for bond hearings … The memorandum itself was subsequently leaked by legal advocacy groups. … The admitted novelty of the Government's

38. Recently, the BIA, a part of the Executive Office for Immigration Review ("EOIR"), which operates under the DOJ authority, has agreed with that interpretation in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). One of the measures of the current administration was to reduce the number of judges at the BIA from 28 to 15, ensuring that most of the judges currently serving on the board were appointed by the current presidential administration, either during this term or in the prior one.[56]

39. Here, the DOJ is part of this process, and the internal memorandum discussing the change in interpretation indicates that the decision to strip immigration judges of jurisdiction over bond hearings was made "in coordination with the DOJ," affirming that section 1225 "is the applicable immigration detention authority for all applicants for admission."[7] Furthermore, former immigration judges have reported that they were "told to rule in a certain way" by superiors, and there was "pressure from above."[8]

40. Regardless of the reasons for the change in interpretation by both the DHS and the DOJ, this change is not aligned with the statute, the jurisprudence, and the protections established in the Constitution. **In other words, Respondents' interpretation violates federal law and due process protections.**

---

legal argument may shed some light on why the Petitioner and Court had such a difficult time recognizing it at first blush.] DHS, in coordination with the Department of Justice (DOJ), has revisited its legal position on detention and release authorities. DHS has determined that [section 1225] of the Immigration and Nationality Act (INA), rather than [section 1226], is the applicable immigration detention authority for all applicants for admission

[5] *Reducing the Size of the Board of Immigration Appeals*, 90 Fed. Reg. 15,525 (Apr. 14, 2025).

[6] Adriel Orozco, *While Federal Firings Focus on Immigration Processing, Funding for Immigration Enforcement Expands*, AM. IMMIGRATION COUNCIL (Mar. 6, 2025), https://www.americanimmigrationcouncil.org/blog/federal-firings-immigration-processing-enforcement-expands/

[7] *See Diaz Martinez*, 2025 WL 2084238, at *4 & nn.10–11 (citing Acting ICE Director Todd M. Lyons's July 8, 2025 memorandum, "Interim Guidance Regarding Detention Authority for Applicants for Admission").

[8] Oscar Margain, *Fired immigration judges describe threat to judicial independence from Justice Dept.*, NBC BOSTON, https://www.nbcboston.com/news/local/fired-us-immigration-judge-interviews/3776340/ (July 25, 2025) [https://perma.cc/G6FL-8D73].

41. This position would render significant portions of 8 U.S.C. § 1226 meaningless, violating one of the most basic canons governing the interpretation of federal statutes, which provides that a statute "should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant …" *Corley v. United States*, 556 U.S. 303, 314 (2009) (internal quotations omitted); *Shulman v. Kaplan*, 58 F.4th 404, 410-11 (9th Cir. 2023). "This principle ... applies to interpreting any two provisions in the U.S. Code, even when Congress enacted the provisions at different times." *Bilski v. Kappos*, 561 U.S. 593, 607-08 (2010).

42. Here, the DOJ and DHS's position is that Petitioner is subject to the mandatory detention provision, and so he should be detained until the finality of his removal proceedings without the opportunity to have a bond hearing. If their interpretation of § 1225 is correct and this section's mandatory detention provisions apply to all noncitizens present in the United States who have not been admitted, it would render superfluous provisions of § 1226 that apply to certain categories of inadmissible noncitizens. *See* § 1226(c)(1)(A), (D), (E); *Shulman v. Kaplan*, 58 F.4th 404, 410–11 (9th Cir. 2023); *Torres v. Barr*, 976 F.3d 918, 930 (9th Cir. 2020) (en banc). Under Respondents' proposed interpretation, which is based by a recent change in DHS's policies, § 1226(c)(1)(E)'s mandated detention for inadmissible noncitizens who are implicated in an enumerated crime, including those "present in the United States without being admitted or paroled," would be meaningless and superfluous because "all noncitizens who have not been admitted" would already be governed by § 1225's mandatory detention authority**.** *See Shulman*, 58 F.4th at 410-11. *See also Corley v. United States,* 556 U.S. 303, 314 n.5 (2009) (explaining that seemingly conflicting

12

statutes read in isolation can be reconciled if read in their broader context, which includes observing the "antisuperflousness" canon).

43. The Supreme Court's decision in *Jennings* likewise supports harmonizing §§ 1225 and 1226 in a manner contrary to Respondents' position. The Court described § 1225 as part of the process that "generally begins at the Nation's borders and ports of entry, where the Government must determine whether a [noncitizen] seeking to enter the country is admissible." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). In contrast, the Court explained that § 1226 governs "the process of arresting and detaining" noncitizens who are living "inside the United States" but "may still be removed," including those "who were inadmissible at the time of entry." *Id.* at 288. The Court summarized the distinction succinctly: "U.S. immigration law authorizes the Government to detain certain [noncitizens] seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain [noncitizens] already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Id.* at 289.

44. Notably, several of the exceptions in § 1226(c) that would be rendered superfluous under the IJ's interpretation of §§ 1225 and 1226 were only recently enacted by Congress in the Laken Riley Act ("LRA"). "When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." *Stone v. INS*, 514 U.S. 386, 397 (1995) (citation omitted). Enacted in January 2025, the LRA amended multiple INA provisions, including §§ 1226 and 1225. See LRA, Pub. L. No. 119-1, 139 Stat. 3 (2025). Pertinent here, the LRA added a new category of noncitizens to § 1226(c)'s mandatory detention authority—those deemed inadmissible, including

for being "present in the United States without being admitted or paroled," who have been arrested, charged with, or convicted of certain crimes. 8 U.S.C. § 1226(c)(1)(E); LRA, Pub. L. No. 119-1. By specifically excepting these criminally implicated inadmissible noncitizens from § 1226(a)'s default discretionary detention framework, Congress necessarily left all other inadmissible noncitizens—those without the specified criminal involvement—subject to § 1226(a). See *Jennings*, 583 U.S. at 289; *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010).

45. Additionally, Congress enacted the LRA in the context of the longstanding agency practice of applying § 1226(a) to inadmissible noncitizens already residing in the country. Another "customary interpretive tool" is the principle that "[w]hen Congress adopts a new law against the backdrop of a 'longstanding administrative construction,'" courts "generally presume[] the new provision should be understood to work in harmony with what has come before." *Monsalvo Velazquez v. Bondi*, 604 U.S. ___, 145 S. Ct. 1232, 1242 (2025) (quoting *Haig v. Agee*, 453 U.S. 280, 297–98 (1981)). In *Monsalvo Velazquez*, the Court emphasized that when a statute is "susceptible" to more than one reasonable interpretation, courts should adopt the reading that is "consistent" with the statute's "longstanding administrative construction." *Id.* Congress's amendments to § 1226(c) in the LRA were made with full awareness of decades of agency practice treating inadmissible noncitizens – such as Mr. Souza Vieira – under § 1226(a)'s discretionary detention framework. Congress, therefore, presumably intended to preserve "the same understanding" of the statute as had been consistently applied by the agency. *Id.*

46. The legislative history of § 1226 reinforces that it governs the detention of noncitizens – like Mr. Souza Vieira – who were found in the United States after not having applied for admission. Prior to the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), the predecessor to § 1226(a) governed deportation proceedings for all noncitizens arrested within the United States. *See* 8 U.S.C. § 1252(a)(1) (1994) ("Pending a determination of deportability ... any [noncitizen] ... may, upon warrant of the Attorney General, be arrested and taken into custody."); *Hose v. INS*, 180 F.3d 992, 994 (9th Cir. 1999) (noting that a "deportation hearing" was the "usual means" of proceeding against a noncitizen physically present in the United States). Like § 1226(a), the predecessor statute authorized discretionary release on bond. See 8 U.S.C. § 1252(a)(1) (1994). When Congress enacted IIRIRA, it expressly stated that § 1226(a) "restates the current provisions in [the predecessor statute] regarding the authority of the Attorney General to arrest, detain, and release on bond" a noncitizen "who is not lawfully in the United States." H.R. Rep. No. 104-469, pt. 1, at 229; see also H.R. Rep. No. 104-828, at 210. Because noncitizens in Mr. Souza Vieira's position were entitled to discretionary detention under the predecessor statute, and Congress confirmed that IIRIRA did not narrow that authority, § 1226 should likewise be interpreted to allow discretionary release on bond for similarly situated noncitizens.

47. Additionally, Respondents' interpretation of § 1226 is undermined by the Department of Homeland Security's longstanding practice of treating noncitizens taken into custody while residing in the United States—including those who were initially found inadmissible upon inspection but released into the country with the government's

acquiescence and who have committed no crimes since—as detained under § 1226(a). See *Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 386 (2024). "[T]he longstanding practice of the government—like any other interpretive aid—can inform [a court's] determination of what the law is." *Id.* (internal quotations omitted, second brackets in original). The Supreme Court has further recognized that deference to executive interpretations of federal statutes is "especially warranted when [the interpretation] was issued roughly contemporaneously with enactment of the statute and remained consistent over time." *Id.* This principle is particularly compelling here, where an individual who has resided in the United States with the government's acquiescence for years is subjected to an infringement of liberty interests – discussed *infra* – solely due to a regime change seeking to expedite removal of non-criminal noncitizens under discretionary conditions.

48. Furthermore, DHS's and the DOJ's selective reading of the statute – which disregards its "seeking admission" language – violates the rule against surplusage and undermines the plain meaning of the text. *See United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) ("'[E]very clause and word of a statute' should have meaning."), quoting *Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883); *United States v. Abbas*, 100 F.4th 267, 283 (1st Cir. 2024) ("'We begin, as always, with the text of the statute' and read it 'according to its plain meaning at the time of enactment,'" quoting *United States v. Winczuk*, 67 F.4th 11, 16 (1st Cir. 2023), cert. denied, 145 S. Ct. 319 (2024)). The statutory phrase "seeking admission" is not explicitly defined but necessarily conveys a present-tense, ongoing action. See *Matter of M-D-C-V-*, 28 I.&N. Dec. 18, 23 (B.I.A. 2020) ("The 'use of the present progressive, like use of the present

participle, denotes an ongoing process,'" quoting *Al Otro Lado v. Wolf*, 952 F.3d 999, 1011–12 (9th Cir. 2020)).

49. Finally, Respondents' interpretation of the statute also directly contradicts the position of the Fifth Circuit. The Circuit has already decided that § 1226(a) applies to "inadmissible aliens who are already 'inside the United States'" *See State v. Biden*, 20 F.4th 928, 940 (5th Cir. 2021). **The Fifth Circuit found that:**

> **Section 1226(a) provides its own detention-and-parole scheme that applies to aliens who have already entered the United States – in contradistinction to the applicants for admission covered by §** 1225(b)(2) and § 1182(d)(5). *See Jennings*, 138 S. Ct. at 837 (explaining § 1226 'generally governs the process of arresting and detaining' inadmissible aliens who are already 'inside the United States'); *see also* Part IV.B, *infra* pages 98–106 (explaining the distinction). **This provision generally requires DHS to obtain an administrative warrant before arrest. *See* § 1226(a) ('On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.'). DHS may release such 'arrested alien[s]' on either bond (at least $1,500) or conditional parole (subject to restrictions). § 1226(a)(2)–(3).**
> *See State v. Biden*, 20 F.4th 928, 940 (5th Cir. 2021).

50. Therefore, because Mr. Souza Vieira's presence in the United States since his inspection and release in August of 2022 – following service of his Notice to Appear – has been under de facto conditional parole pursuant to § 1226, the interpretation applied by Respondents is unlawful. Both the BIA's jurisdictional determination and Mr. Souza Vieira's continued detention, absent a hearing to determine whether he poses a danger to persons or property or is likely to appear for future proceedings, are contrary to the laws of the United States.

## <u>COUNT TWO</u>

## <u>Violation of Fifth Amendment Protections and Right to Due Process</u>

51. Mr. Souza Vieira's detention by DHS violates his rights under the Due Process Clause of the Fifth Amendment to the United States Constitution. The allegations in the above paragraphs are realleged and incorporated herein. Immigration detention violates due process if it is not reasonably related to the purpose of ensuring a noncitizen's removal from the United States. *See Zadvydas v. Davis*, 533 U.S. 678, 690-92, 699-700 (2001); *Jackson v. Indiana*, 406 U.S. 715, 738 (1972). Where removal is not reasonably foreseeable, detention cannot be reasonably related to the purpose of effectuating removal and is unlawful. *See id*. at 699-700.

52. The Supreme Court has also established the principle that noncitizens in deportation or removal proceedings are just as entitled to due process protections as anyone else. *See Zadvydas*, 533 U.S. at 690 (2001) ("A statute permitting indefinite detention of an alien would raise a serious constitutional problem. The Fifth Amendment's Due Process Clause forbids the Government to 'depriv[e]" any "person . . . of . . . liberty . . . without due process of law.'")

53. In *Jennings v. Rodriguez,* the Supreme Court made a clear distinction between noncitizens who are detained while entering the country and noncitizens who are already present in the United States. *Jennings v. Rodriguez*, 804 F. 3d 106. The opinion of the Supreme Court recognizes that **"§ 1226 applies to aliens already present in the United States. . . ." and that "§ 1226(a) authorizes the Attorney General to arrest and detain an alien 'pending a decision on whether the alien is to be removed from the United States.'"** § 1226(a) (emphasis added). As long as the detained alien is not covered by § 1226(c), the Attorney General "may release" the alien on "bond . . . or conditional parole." § 1226(a). Furthermore, federal regulations

provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention. *See* 8 CFR §§ 236.1(d)(1), 1236.1(d)(1).

54. This understanding has long been supported by the Supreme Court, indicating that noncitizens have fewer protections in their ***initial entry.***

55. In *Nishimura Ekiu*, the Court clarified that arriving aliens are only individuals who have never been to the U.S. – specifically, **"foreigners who have never been naturalized, nor acquired any domicile or residence within the United States, nor even been admitted into the country pursuant to law**." *See Nishimura Ekiu v. United States,* 142 U.S. 651 (1892) (emphasis added).

56. In *Landon*, the Court held that an alien seeking **initial admission** to the United States requests a privilege and is therefore afforded fewer constitutional rights. *See Landon v. Plasencia,* 459 U.S. 21, 32 (1982) (emphasis added).

57. In *Shaughnessy v. United States ex rel. Mezei,* the Court again ratified that the different protections are for those "on the threshold of initial entry". *See Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953).

58. In *Thuraissigiam*, the Court reinforced the limited protections for individuals seeking **initial entry to the United States**. *See Department of Homeland Security v. Thuraissigiam,* 591 U.S. 199, 220 (2020) (emphasis added).

59. In *United States v. Flores-Montano,* the Supreme Court reiterated that the power over immigration is "at its zenith at the **international border.**" *See United States v. Flores-Montano*, 541 U.S. 149, 152–53 (2004) (emphasis added).

60. Therefore, there is no question that the Supreme Court has long recognized a *distinction* between those who are arrested at the border trying to enter the country and those arrested while in the country.

61. The ultimate question is whether noncitizens who have resided in the United States for several years are entitled to fundamental due process protections, including a hearing before an independent adjudicator to determine the lawfulness of their detention. As supported in this brief, there are numerous legal arguments to support the conclusion that they are entitled to such rights. Beyond the technical legal analysis, however, it is also a matter of basic fairness and common sense: all individuals, regardless of immigration status, are entitled to fundamental protections of liberty.

> Were it true that "arriving" noncitizens have no due process rights, it would mean that such individuals – including those living freely among us on parole – could "be subjected to the punishment of hard labor without a judicial trial." *Clerveaux*, 397 F. Supp. 3d at 316 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 704 (2001) (Scalia, J., dissenting)). And it would mean that a noncitizen living here on parole could be taken into custody and beaten by local police without any violation of the Fourth Amendment. That cannot be the law. *Mata Velasquez v. Kurzdorfer*, No. 25-CV-493, 2025 WL 1953796, at *16 (W.D.N.Y. July 16, 2025)

62. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. Being free from physical detention is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) "[W]hile [DHS] might want to enforce this country's immigration laws efficiently, it cannot do that at the expense of fairness and due process." *Ceesay*, 2025 WL 1284720, at *1. Also, "there is something fundamentally unfair about the government's changing the rules by fiat simply because it wants to. That is arbitrary by definition." *Mata Velasquez v.*

*Kurzdorfer,* No. 1:25-cv-493, 2025 WL 1953796 (W.D.N.Y. July 16, 2025). "Luring noncitizens here, paroling them for a period of time, and then telling them 'never mind' is just plain wrong—made even worse when the noncitizens are detained while their cases are heard. And a change in administration does not justify or excuse such fundamental unfairness." *Id*

63. A basic principle—that individuals placed at liberty are entitled to due process before the government again imprisons them—has particular relevance here, where Mr. Souza Vieira's detention was previously found to be unnecessary to serve any purpose. There is no allegation that Mr. Souza Vieira's detention beyond the execution of the warrant was necessary or authorized, and, therefore, his detention at that time violated his Fourth Amendment rights as well, which are afforded to all those peacefully residing in the United States. Mr. Souza Vieira was not detained while crossing the border, but while living in the United States and waiting to receive lawful status as a special immigrant juvenile. He has committed no crime, and his release from custody in 2022 provided him with a protected liberty interest. The government may not unilaterally take away his liberty.

64. By statute and regulation, as interpreted by the BIA, ICE has the authority to re-arrest a noncitizen and revoke their release pending the outcome of removal proceedings only when there has been a change in circumstances since the individual's initial release. *See Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021) ("Thus, absent changed circumstances ... ICE cannot redetain Panosyan."); *Matter of Sugay*, 17 I&N Dec. 647, 640 (B.I.A. 1981). Additionally, any change in circumstances must be "material." *Saravia v. Barr*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017), *aff'd sub*

*nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). The Due Process Clause also proscribes the Government's authority to arrest a noncitizen and revoke their release because it is well-established that individuals released from incarceration have a liberty interest in their freedom. To protect that interest, due process requires notice and a hearing, before any re-arrest, at which hearing the individual is allowed to advance their arguments as to why their release should not be revoked. This most basic American principle—that individuals placed at liberty are entitled to process before the government reimprisons them—has particular meaning here, where Mr. Souza Vieira's detention was already found, in 2022, to be unnecessary.

## **PRAYER FOR RELIEF**

Wherefore, Petitioner respectfully requests this Court to grant the following:

(1)   Assume jurisdiction over this matter.

(2)   Issue an Order to Show Cause, pursuant to 28 U.S.C. § 2243, ordering Respondents to show cause why the Petition should not be granted within three days.

(3)   Declare that Petitioner's detention violates the Due Process Clause of the Fifth Amendment, as well as federal law.

(4)   Issue a Writ of Habeas Corpus ordering Respondents to release Petitioner immediately.

(5)   Award Petitioner attorney's fees and costs under the Equal Access to Justice Act, and on any other basis justified under law; and

(6)   Grant any further relief this Court deems just and proper.

Respectfully submitted,

*/s/ Vinicius Damasceno*
Vinicius Damasceno, Esq.
*Counsel for Petitioner*
Bar No. 706468 (Pro Hac Vice Pending)
Celedon Law PC
277 Main Street, Ste 305
Marlborough, MA 01752
508-573-3170
vinicius@celedonlaw.com

Dated: September 29, 2025


## CERTIFICATE OF SERVICE

I, Vinicius Damasceno, hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF (NEF) and paper copies will be sent to those indicated as non-registered participants.


Dated: September 29, 2025          */s/ Vinicius Damasceno*
                                                                Vinicius Damasceno, Esq.