United States District Court
Western District of Texas
El Paso Division

Teyllon Souza Vieira,
    Petitioner,

    v.

No. 3:25-CV-00432-DB

Kristi Noem, in her official capacity as
Secretary, U.S. Department of Homeland
Security *et al*,
    Respondents.

**Federal Respondents' Response to
Petitioner's Writ of Habeas Corpus**

Federal Respondents timely submit this response per this Court's Order dated September 30, 2025, directing service and ordering a response no later than October 3, 2025. *See* ECF No. 5. In his petition, Teyllon Souza Vieira ("Petitioner"), requests the Court grant his petition for writ of habeas corpus and order his immediate release from immigration detention. Petitioner lodges two causes of action, alleging that his arrest and continued detention without bond during removal proceedings is an unlawful violation of the immigration statutes and due process. *See* ECF No. 1 at 9-22. In his Prayer for Relief, Petitioner seeks his immediate release. *Id* at 22.[1]

The petition should be denied. Following his most recent arrest on September 11, 2025, USCIS issued and served a Notice of Termination of Special Immigration Juvenile Deferred Action on September 12, 2025. *See* Ex. A (Termination Notice). On the same day, ICE issued a Notice to Appear (NTA) to place Petitioner back into removal proceedings as an alien present in the United States without inspection or parole. *See* Exhibit B (Superseding NTA, dated October 2,

---

[1] Petitioner also claims entitlement to attorney fees under the Equal Access to Justice Act ("EAJA"), but the Fifth Circuit no longer recognizes EAJA fees in the habeas context. ECF No. 1 at 25; *see also Barco v. Witte*, 65 F.4th 782 (5th Cir. 2023).

1

2025). Petitioner remains lawfully detained pending his removal proceedings.

On September 5, 2025, the Board of Immigration Appeals (BIA) issued a precedent decision finding that aliens present in the United States without having been admitted or paroled, like this Petitioner, are subject to mandatory detention under § 1225(b)(2) as applicants for admission. *Matter of Yajure-Hurtado*, 29 I&N Dec. 216 (BIA 2025). For these reasons and those that follow, Petitioner is lawfully detained in removal proceedings, and this Court should dent the petition.

## I. FACTS AND PROCEDURAL HISTORY

Petitioner is a native and citizen of Brazil. ECF No. 1 at 1. Petitioner entered the United States on or about August 17, 2022. *Id*. Petitioner was encountered by U.S. Border Patrol and placed into removal proceedings charged as an alien present in the United States without being admitted or paroled pursuant to 8 U.SC. § 1182. *Id* at 4-6. On August 21, 2022, Petitioner was released from ICE custody. *Id*. at 5. On February 18, 2025, Petitioner filed Form I-360 with USCIS. *Id* at 5. Said I-360 was subsequently approved on February 18, 2025. *Id*. The approval also bestowed a deferred action benefit on Petitioner in the exercise of discretion. *Id*. Petitioner then filed a Motion to Terminate proceedings with the Immigration Court, and proceedings were terminated on May 6, 2025. *Id*.

Petitioner is currently detained at the Camp East Montana Detention Center in El Paso, Texas, pending removal proceedings. *Id*. Petitioner requested a bond hearing before the immigration court, but it was cancelled and has yet to be rescheduled. *Id*. Petitioner is scheduled to have his first master calendar hearing before an immigration judge on November 25, 2025. *Id*.

## II. Relevant Immigration Law

Congress enacted a multi-layered statutory scheme for the civil detention of aliens pending

a decision on removal, during the administrative and judicial review of removal orders, and in preparation for removal. *See generally,* 8 U.S.C. §§ 1225, 1226, 1231. It is the interplay between these statutes that is at issue here.

### A. Inspection and Detention under 8 U.S.C. § 1225

"To implement its immigration policy, the Government must be able to decide (1) who may enter the country and (2) who may stay here after entering." Jennings v. Rodriguez, 583 U.S. 281, 286 (2018). Section 1225 governs inspection, the initial step in this process, id., stating that all alien "applicants for admission . . . shall be inspected by immigration officers." 8 U.S.C. § 1225(a)(3). The statute—in a provision entitled "ALIENS TREATED AS APPLICANTS FOR ADMISSION"—dictates who "shall be deemed for purposes of this chapter an applicant for admission," defining that term to encompass both an alien "present in the United States who has not been admitted or [one] who arrives in the United States . . . ." *Id.* § 1225(a)(1) (emphasis added). Paragraph (b) of § 1225 governs the inspection procedures applicable to all applicants for admission. They "fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." Jennings, 583 U.S. at 287. Section 1225(b)(1) applies to those "arriving in the United States" and "certain other"[2] aliens "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Id.* § 1225(b)(1)(A)(i), (iii). Aliens under this subsection are generally subject to expedited removal proceedings "without further hearing or

---

[2] The "certain other aliens" referred to are addressed in § 1225(b)(1)(A)(iii), which gives the Attorney General sole discretion to apply (b)(1)'s expedited procedures to an alien who "has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility," subject to an exception inapplicable here. The statute therefore explicitly confirms application of its inspection procedures for those already in the country, including for a period of years.

review." *See id*. § 1225(b)(1)(A)(i). But where the applicant "indicates an intention to apply for asylum . . . or a fear of persecution," immigration officers will refer him or her for a credible fear interview. *Id*. § 1225(b)(1)(A)(ii). An applicant "with a credible fear of persecution" is "detained for further consideration of the application for asylum." *Id*. § 1225(b)(1)(B)(ii). If the alien does not indicate an intent to apply for asylum, express a fear of persecution, or is "found not to have such a fear," he is detained until removal. *Id*. §§ 1225(b)(1)(A)(i), (B)(iii)(IV).

Section 1225(b)(2) is "broader" than (b)(1), "serv[ing] as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)." Jennings, 583 U.S. at 287. Subject to exceptions not applicable here, "if the examining immigration officer determines that the alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a removal proceeding." 8 U.S.C. § 1225(b)(2)(A) (emphasis added); *see also Matter of Q. Li*, 29 I. & N. Dec. 66, 68 (BIA 2025) ("for aliens arriving in and seeking admission into the United States who are placed directly in full removal proceedings, section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), mandates detention 'until removal proceedings have concluded.'") (citing Jennings, 583 U.S. at 299). DHS retains sole discretion to release on parole "any alien applying for admission" on a "case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); *see Biden v. Texas*, 597 U.S. 785, 806 (2022).

### B.  Apprehension and Discretionary Detention under 8 U.S.C. § 1226(a)

"Even once inside the United States, aliens do not have an absolute right to remain here. For example, an alien present in the country may still be removed if he or she falls 'within one or more . . . classes of deportable aliens.' §1227(a)." *Jennings*, 583 U.S. at 288 (citing 8 U.S.C. § 1227(a), which outlines "classes of deportable aliens" among those already "in and admitted to the United States") (emphasis added)). "Section 1226 generally governs the process of arresting and

detaining that group of aliens pending their removal." *Id*. Applicable "[o]n a warrant issued by the Attorney General," it provides that an alien may be arrested and detained pending a decision" on the removal. 8 U.S.C. § 1226(a). For aliens arrested under §1226(a), the Attorney General and the DHS have broad discretionary authority to detain an alien during removal proceedings.[3] *See* 8 U.S.C. § 1226(a)(1) (DHS "may continue to detain the arrested" alien during the pendency of removal proceedings).

Following apprehension under § 1226(a), a DHS officer makes an initial discretionary determination concerning release. *See* 8 C.F.R. § 236.1(c)(8). DHS "may continue to detain the alien." 8 U.S.C. § 1226(a)(1). "To secure release, the alien must show that he does not pose a danger to the community and that he is likely to appear for future proceedings." *Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021) (citing 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8); *Matter of Adeniji*, 22 I. & N. Dec. 1102, 1113 (BIA 1999)). If DHS decides to release, it may set a bond or condition the release. *See* 8 U.S.C. § 1226(a)(2); 8 C.F.R. § 236.1(c)(8).

If DHS determines that an alien should remain detained during the pendency of his removal proceedings, the alien may request a bond hearing before an immigration judge. *See* 8 C.F.R. §§ 236.1(d)(1), 1003.19, 1236.1(d). The immigration judge conducts a bond hearing and decides whether release is warranted, based on a variety of factors that account for ties to the United States and risks of flight or danger to the community. *See Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)

---

[3] Although the relevant statutory sections refer to the Attorney General, the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002), transferred all immigration enforcement and administration functions vested in the Attorney General, with few exceptions, to the Secretary of Homeland Security. The Attorney General's authority—delegated to immigration judges, *see* 8 C.F.R. § 1003.19(d)—to detain, or authorize bond for aliens under section 1226(a) is "one of the authorities he retains . . . although this authority is shared with [DHS] because officials of that department make the initial determination whether an alien will remain in custody during removal proceedings." *Matter of D-J-*, 23 I. & N. Dec. 572, 574 n.3 (A.G. 2003).

(identifying nine non-exhaustive factors); 8 C.F.R. § 1003.19(d) ("The determination . . . as to custody status or bond may be based upon any information that is available to the Immigration Judge or that is presented to him or her by the alien or [DHS].").

Section 1226(a) does not grant "any right to release on bond." *Matter of D-J-*, 23 I. & N. Dec. at 575 (citing *Carlson*, 342 U.S. at 534). Nor does it address the applicable burden of proof or particular factors that must be considered. See generally 8 U.S.C. § 1226(a). Rather, it grants DHS and the Attorney General broad discretionary authority to determine, after arrest, whether to detain or release an alien during his removal proceedings. *See id*. If, after the bond hearing, either party disagrees with the decision of the immigration judge, that party may appeal that decision to the BIA. *See* 8 C.F.R. §§ 236.1(d)(3), 1003.19(f), 1003.38, 1236.1(d)(3). Included within the Attorney General and DHS's discretionary authority are limitations on the delegation to the immigration court. Under 8 C.F.R. § 1003.19(h)(2)(i)(B), the immigration judge does not have authority to redetermine the conditions of custody imposed by DHS for certain classes of aliens, including, inter alia, any arriving alien and any alien in removal proceedings who is subject to INA § 236(c), 8 U.S.C. § 1226(c).

### C.  Review of custody determinations at the BIA

The BIA is an appellate body within EOIR. *See* 8 C.F.R. § 1003.1(d)(1). Members of the BIA possess delegated authority from the Attorney General. 8 C.F.R. § 1003.1(a)(1). The BIA is "charged with the review of those administrative adjudications under the [INA] that the Attorney General may by regulation assign to it," including IJ custody determinations. 8 C.F.R. §§ 1003.1(d)(1), 236.1; 1236.1. The BIA not only resolves particular disputes before it, but also "through precedent decisions, [it] shall provide clear and uniform guidance to DHS, the immigration judges, and the general public on the proper interpretation and administration of the

[INA] and its implementing regulations." *Id*. § 1003.1(d)(1). "The decision of the [BIA] shall be final except in those cases reviewed by the Attorney General." 8 C.F.R. § 1003.1(d)(7).

### III. Petitioner Is Subject to Mandatory Detention Without a Bond Hearing under the Plain Language of 8 U.S.C. § 1225(b)(2).

On September 5, 2025, the BIA issued a precedent decision in *Matter of Yajure-Hurtado*, affirming that under the plain language of 8 U.S.C. § 1225(b)(2), aliens present in the United States without admission, like Petitioner here, are subject to mandatory detention without a bond hearing.6 29 I&N Dec. at 216. Petitioner cannot dispute that he is deemed an "applicant for admission" under § 1225 simply because he was not placed into expedited removal proceedings. That interpretation suggests that only those aliens inspected at a port of entry are included in the "applicants for admission" who are subject to mandatory detention under § 1225(b)(2). This reading fails basic canons of interpretation.

First, consider the plain text. Statutory language "is known by the company it keeps." *Marquez-Reyes v. Garland*, 36 F.4th 1195, 1202 (9th Cir. 2022) (quoting *McDonnell v. United States*, 579 U.S. 550, 569 (2016)). "Seeking admission" and "appl[ying] for admission," in this context, are plainly synonymous. Congress linked these two variations of the same phrase in § 1225(a)(3), which requires all aliens "who are applicants for admission or otherwise seeking admission" to be inspected by immigration officers. 8 U.S.C. § 1225(a)(3). The word "or" here "introduce[s] an appositive—a word or phrase that is synonymous with what precedes it ('Vienna or Wien,' 'Batman or the Caped Crusader')." *United States v. Woods*, 571 U.S. 31, 45 (2013). As a result, a person "seeking admission" is just another way of saying someone is applying for admission—that is, he is an "applicant for admission"—which includes both those individuals arriving in the United States and those already present without admission. *See* 8 U.S.C. § 1225(a)(1); *Lemus-Losa*, 25 I. & N. Dec. at 743.

7

Congress used the simple phrase "arriving alien" throughout § 1225. *See e.g.*, 8 U.S.C.§ 1225(a)(2), (b)(1), (c), (d)(2). That phrase plainly distinguishes an alien presently or recently "arriving" in the United States from other "applicants for admission" who, like Petitioner, have been present in the United States without having been admitted. But Congress did not use the word "arriving" to limit the scope of § 1225(b)(2)'s mandatory-detention provision. If Congress meant to limit § 1225(b)(2)'s scope to "arriving" aliens, it could have simply used that phrase, like it did in § 1225(b)(1). Instead, Congress used the phrase "alien seeking admission" as a plain synonym for "applicant for admission."

*Second*, consider the statutory structure of § 1225(b). To be sure, § 1225(b)(1) applies to applicants for admission who are "arriving in the United States" (or those who have been present for less than two years) and provides for expedited removal proceedings. It also contains its own mandatory-detention provision applicable during those expedited proceedings. 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). Section 1225(b)(2), by contrast, applies to "other" aliens—"in the case of an alien who is an applicant for admission"—those not subject to expedited removal under (b)(1). They too must "be detained" but instead for a more typical removal "proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). Properly understood, § 1225(b) applies to two groups of "applicants for admission": (b)(1) applies to "arriving" or recently arrived aliens who must be detained pending expedited removal proceedings; and (b)(2) is a "catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)," *Jennings*, 583 U.S. at 287, who, like Petitioner, must be "detained for a [non-expedited] proceeding under section 1229a of this title," 8 U.S.C. § 1225(b)(2). A contrary interpretation limiting (b)(2) to "arriving" aliens would render it redundant and without any effect.

And *third*, compare § 1225's mandatory-detention provisions alongside the discretionary-

detention provisions of § 1226. Unless there is a conflict, a specific provision governs over a more general provision encompassing that same matter. *See Nitro-Lift Technologies, LLC v. Howard,* 568 U.S. 17, 21 (2012*); Bloate v. U.S.*, 559 U.S. 196, 207–08 (2010). Section 1226(a) applies to aliens "arrested and detained pending a decision" on removal. 8 U.S.C. § 1226(a). Section 1225(b), by contrast, is narrower, applying only to aliens who are "applicants for admission,"—a specially defined subset of aliens that explicitly includes those "present in the United States who ha[ve] not be admitted." Id. § 1225(a). *See also Florida v. United States*, 660 F. Supp. 3d 1239, 1275 (N.D. Fla. 2023) ("§ 1225(a) treats a specific class of aliens as 'applicants for admission,' and § 1225(b) mandates detention of these aliens throughout their removal proceedings. Section 1226(a), by contrast, states in general terms that detention of aliens pending removal is discretionary unless the alien is a criminal alien."). Because Petitioner falls squarely within the definition of individuals deemed to be "applicants for admission," the specific detention authority under § 1225(b) governs over the general authority found at § 1226(a).[4]

When the plain text of a statute is clear, that meaning is controlling and courts "need not examine legislative history." *NPR Investments, LLC ex rel. Roach v. U.S.*, 740 F.3d 998, 1007 (5th Cir. 2014). Indeed, "in interpreting a statute a court should always turn first to one, cardinal canon before all others." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992). The Supreme Court has "stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Id*. (citations omitted). Thus, "[w]hen the words

---

[4]    Even where an alien is unlawfully present for 20 years, the statute nonetheless indicates that he is an "applicant for admission." *See Pena v. Hyde*, Civ. Action No. 25-11983, 2025 WL 2108913 (D. Mass. July 28, 2025). The BIA has long recognized that "many people who are not *actually* requesting permission to enter the United States in the ordinary sense are nevertheless deemed to be 'seeking admission' under the immigration laws." *Matter of Lemus-Losa*, 25 I. & N. Dec. 734, 743 (BIA 2012).

of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Id*. (citing *Rubin v. United States*, 449 U.S. 424 at 430 (1981)).

Even if legislative history were relevant, the text of a law controls over purported legislative intentions. *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 642 (2022). Indeed, the legislative history and evidence regarding the purpose of § 1225(b)(2) show that Congress did not mean to treat aliens arriving at ports of entry worse than those who successfully entered the nation's interior without inspection. *See Yajure-Hurtado,* 29 I&N Dec. at 222–25. Congress passed IIRIRA to correct "an anomaly whereby immigrants who were attempting to lawfully enter the United States were in a worse position than persons who had crossed the border unlawfully." *Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020) (en banc), declined to extend by, *United States v. Gambino-Ruiz,* 91 F.4th 981 (9th Cir. 2024). It "intended to replace certain aspects of the [then-]current 'entry doctrine,' under which illegal aliens who have entered the United States without inspection gain equities and privileges … that are not available to aliens who present themselves for inspection at a port of entry." *Id*. (quoting H.R. Rep. 104-469, pt. 1, at 225).

The Court should reject Petitioner's interpretation because it rewards aliens like him who unlawfully lived—undetected—in the interior of the United States after crossing the border without permission, by making them bond-eligible, unlike arriving aliens, "who present themselves for inspection at a port of entry." *Id*. In other words, Petitioner is asking this Court to find that aliens, unlike him, who complied with the law are subject to mandatory detention under § 1225, while those, like him, who successfully evaded detection, remain eligible for bond under § 1226(a). Congress did not intend this absurd result. *See In re Google Digital Advertising Antitrust Litigation*, 677 F.Supp.3d 1372, 1376 n.3 (5th Cir. 2023) (collecting cases and noting that courts should not construe a statute to produce an absurd result that Congress clearly did not intend).

10

As a threshold matter, 8 U.S.C. §§ 1252(g) and (b)(9) preclude review of Petitioner's claims. This statutory interpretation issue is not properly before the district court and must be funneled through the court of appeals. *See SQDC v. Bondi*, No. 25–3348 (PAM/DLM), 2025 WL 2617973 (D. Minn. Sept. 9, 2025). Detention during deportation proceedings is a constitutionally valid aspect of the deportation process. *Demore v. Kim*, 538 U.S. 510, 523 (2003). Indeed, removal proceedings "'would be [in] vain if those accused could not be held in custody pending the inquiry nto their true character.'" *Demore*, 538 U.S. at 523 (quoting *Wong Wing v. United States*, 163 U.S. 228, 235 (1896)).

### A. Section 1252(g)

*First,* Section 1252(g) specifically deprives courts of jurisdiction, including habeas corpus jurisdiction, to review "any cause or claim by or on behalf of an alien arising from the decision or action by the Attorney General to [1] *commence proceedings*, [2] adjudicate cases, or [3] execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g) (emphasis added). Section1252(g) applies "to three discrete actions that the Attorney General may take: [the] 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis in original). Except as provided in § 1252, courts cannot entertain challenges arising from the decisions or actions to commence or adjudicate removal proceedings or execute a removal order. *Duron v. Johnson*, 898 F.3d 644, 647–48 (5th Cir. 2018). Section 1252(g) also bars district courts from hearing challenges to the *method* by which the DHS Secretary chooses to commence removal proceedings, including the decision to detain an alien pending removal. *See Alvarez v. ICE*, 818 F.3d 1194, 1203 (11th Cir. 2016) ("By its plain terms, [§ 1252(g)] bars us from questioning ICE's discretionary decisions to commence removal" and also to review "ICE's decision to take

11

[plaintiff] into custody and to detain him during removal proceedings").

Petitioner's detention arises from the decision to commence removal proceedings against him. *See* Ex. B (NTA); *see also, e.g.*, *Duron v. Johnson*, 898 F.3d at 647–48; *Quezada v. U.S.*, 3:24–CV–564–L (BK), 2025 WL 747263 at *6 (N.D. Tex. Jan. 29, 2025) (barring FTCA claim under § 1252(g) where ICE arrested alien on the same day the NTA was issued and served on him); *Hodgson v. U.S.*, No. SA:13–CV–702, 2014 WL 4161777 at *6–8 (W.D. Tex. Aug. 19, 2014); *Rico-Pineda v. Lucero*, No. SA–15–CA–126–OLG, 2015 WL 13805331 at *3–4 (W.D. Tex. July 6, 2015). Removal proceedings commence by filing a charging document, such as an NTA, with the immigration court. *See Pereida v. Wilkinson*, 592 U.S. 224, (2021); *Pierre-Paul v. Barr*, 930 F.3d 684, 686 (5th Cir. 2019); 8 C.F.R. § 1003.14(a). Where the government detains the alien for placement into removal proceedings, § 1252(g) bars review of claims arising from such detention. *See Herrera-Correra v. United States*, No. CV 08-2941 DSF (JCX), 2008 WL 11336833, at *3 (C.D. Cal. Sept. 11, 2008). As such, there is no judicial review of Petitioner's claim that he is entitled to bond under § 1226(a).

**B. Section 1252(b)(9)**

*Second,* under § 1252(b)(9), "judicial review of all questions of law . . . including interpretation and application of statutory provisions . . . arising from any action taken . . . to remove an alien from the United States" is only proper before the appropriate federal court of appeals in the form of a petition for review of a final removal order. *See* 8 U.S.C. § 1252(b)(9); *Monsalvo v. Bondi*, 604 U.S. ---, 145 S.Ct. 1232, 1241 (2025) (rejecting argument that § 1252(b)(9) limits the scope of circuit court review to only certain kinds of legal errors); *AAADC*, 525 U.S. at 483. Section 1252(b)(9) is an "unmistakable 'zipper' clause" that "channels judicial review of all [claims arising from deportation proceedings]" to a court of appeals in the first instance. *Id.*; *see*

12

*also, e.g.,* 8 U.S.C. § 1252(b)(9); *see also El Gamal v. Noem*, --- F.Supp.3d---, 2025 WL 1857593 at *5 (W.D. Tex. July 2, 2025) (collecting cases and finding that any challenge to ICE's initial decision to detain the alien during removal proceedings is protected from judicial review in district court, because the alien must appeal any order of removal to the BIA and ultimately petition for judicial review of any relevant constitutional claims by the court of appeals); *Lopez v. Barr*, No. CV 20- 1330 (JRT/BRT), 2021 WL 195523, at *2 (D. Minn. Jan. 20, 2021) (citing *Nasrallah v. Barr*, 590U.S. 573, 579–80 (2020)).

Moreover, § 1252(a)(5) provides that a petition for review is the exclusive means for judicial review of immigration proceedings:

> Notwithstanding any other provision of law (statutory or nonstatutory), . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e) [concerning aliens not admitted to the United States].

8 U.S.C. § 1252(a)(5). "Taken together, § 1252(a)(5) and § 1252(b)(9) mean that *any* issue— whether legal or factual—arising from *any* removal-related activity can be reviewed *only* throughthe [petition-for-review] process." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) (emphasis in original); *see id*. at 1035 ("§§ 1252(a)(5) and [(b)(9)] channel review of all claims, including policies-and-practices challenges . . . whenever they 'arise from' removal proceedings"); *accord Ruiz v. Mukasey*, 552 F.3d 269, 274 n.3 (2d Cir. 2009) (only when the action is "unrelated to any removal action or proceeding" is it within the district court's jurisdiction); *cf. Xiao Ji Chen v. U.S. Dep't of Justice*, 434 F.3d 144, 151 n.3 (2d Cir. 2006) (a "primary effect" of the REAL ID Act is to "limit all aliens to one bite of the apple" (internal quotation marks omitted)).

Critically, "[§] 1252(b)(9) is a judicial channeling provision, not a claim-barring one." *Aguilar v. ICE*, 510 F.3d 1, 11 (1st Cir. 2007). Indeed, 8 U.S.C. § 1252(a)(2)(D) provides that

13

"[n]othing . . . in any other provision of this chapter . . . shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." *See also Ajlani v. Chertoff*, 545 F.3d 229, 235 (2d Cir. 2008) ("[J]urisdiction to review such claims is vested exclusively in the courts of appeals[.]"). The petition-for-review process before the court of appeals ensures that aliens have a proper forum for claims arising from their immigration proceedings and "receive their day in court." *J.E.F.M.*, 837 F.3d at 1031–32 (internal quotations omitted); *see also Rosario v. Holder*, 627 F.3d 58, 61 (2d Cir. 2010) ("The REAL ID Act of 2005 amended the [INA] to obviate . . . Suspension Clause concerns" by permitting judicial review of "nondiscretionary" BIA determinations and "all constitutional claims or questions of law.").

In evaluating the reach of subsections (a)(5) and (b)(9), the Second Circuit explained that jurisdiction turns on the substance of the relief sought. *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011). Those provisions divest district courts of jurisdiction to review both direct and indirect challenges to removal orders, including decisions to detain for purposes of removal or for proceedings. *See Jennings*, 583 U.S. at 294–95 (§ 1252(b)(9) includes challenges to the "decision to detain [an alien] in the first place or to seek removal[.]"). Here, Petitioner challenges the government's decision and action to detain, which arises from DHS's decision to commence removal proceedings against him and is thus an "action taken . . . to remove [her] from the United States." *See* 8 U.S.C. § 1252(b)(9); *see also, e.g.*, *Jennings*, 583 U.S. at 294–95; *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (finding that 8 U.S.C. § 1226(e) did not bar review in that case because the petitioner did not challenge "his initial detention"); *Saadulloev v. Garland*, No. 3:23-CV-00106, 2024 WL 1076106, at *3 (W.D. Pa. Mar. 12, 2024) (recognizing that there is no judicial review of the threshold detention decision, which flows from the government's decision

14

to "commence proceedings"). As such, the Court lacks jurisdiction over this action.

The reasoning in *Jennings* further outlines why Petitioner's claims are unreviewable here. While holding that it was unnecessary to comprehensively address the scope of § 1252(b)(9), the Supreme Court in *Jennings* also provided guidance on the types of challenges that may fall within the scope of § 1252(b)(9). *Jennings*, 583 U.S. at 293–94. The Court found that "§1252(b)(9) [did] not present a jurisdictional bar" in situations where "respondents . . . [were] not challenging the decision to detain them in the first place." *Id.* at 294–95. In this case, Petitioner *does* challenge the government's decision to detain him in the first place. Though Petitioner may attempt to frame this challenge as one relating to detention authority, rather than a challenge to DHS's decision to detain him pending him removal proceedings in the first instance, such creative framing does not evade the preclusive effect of § 1252(b)(9).

Indeed, the fact that Petitioner is challenging the basis upon which he is detained is enough to trigger § 1252(b)(9) because "detention *is* an 'action taken . . . to remove' an alien." *See Jennings*, 583 U.S. 318, 319 (Thomas, J., concurring); 8 U.S.C. § 1252(b)(9). Petitioner must present his claims before the appropriate federal court of appeals because they challenge the government's decision or action to detain him, which cannot be raised in this Court. *See* 8 U.S.C. § 1252(b)(9). Petitioner is lawfully detained in removal proceedings as an alien charged with removability for unlawfully entering and remaining in the country without authorization. 8 U.S.C. § 1182(a)(6). Nothing in the petition provides a legal basis that obligates the government to set a bond for his release.

## IV.    Section 1225(b) Is Not Unconstitutional as Applied to Petitioner, Because the Statute Does Not Entitle Him to A Bond Hearing.

While as-applied constitutional challenges to immigration detention may be brought under certain circumstances, there is no colorable claim articulated here that Petitioner's detention

15

without bond is unconstitutional. *See, e.g., Jennings*, 583 U.S. at 312. This Court's review is limited to whether ICE is providing due process of law to Petitioner within the scope of § 1225(b). *Id.; see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020). Indeed, Petitioner has been placed "full" removal proceedings, which entitles him to robust due process protections, including representation by counsel of his choice at no expense to the government and appellate review of any adverse decision. Petitioner is not entitled to anything beyond what § 1225(b) provides him. *See Jennings*, 583 U.S. at 312; *see also Thuraissigiam*, 591 U.S, at 140.

Moreover, Petitioner's pre-removal custody is neither prolonged, nor indefinite. Petitioner has been detained for approximately three weeks while pending removal proceedings. Pre-removal-order detention "has a definite termination point: *the conclusion of removal proceedings*." *Castaneda v. Perry*, 95 F.4th 750 (4th Cir. 2024) (emphasis in original) (paraphrasing *Jennings*, 583 U.S. at 304). Petitioner is scheduled for a hearing with the immigration judge in his removal proceedings on November 25, 2025. *See* Exhibit B (Superseding NTA). Petitioner's detention is not delayed beyond anything other than ordinary litigation processes. *See Linares v. Collins*, 1:25-CV-00584-RP-DH, ECF No. 14 at 15 (W.D. Tex. Aug. 12, 2025) (collecting cases and finding that aliens cannot assert viable due process claims when their detention is caused by their own plight, because delay due to litigation activity does not render detention indefinite).

Petitioner is not entitled to more process than what Congress provided him by statute, regardless of whether the applicable statute is § 1225(b) or § 1226(a). *See Jennings*, 583 U.S. at 297–303; *Thuraissigiam*, 591 U.S. at 140 (finding that applicants for admission are entitled only to the protections set forth by statute and that "the Due Process Clause provides nothing more"). An "expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause." *Olim v. Wakinekona*, 461 U.S. 238, 250 n. 12 (1983).

16

Although district courts have recently ruled against the government in this context, those cases do not adequately explore relevant and persuasive decisions finding no constitutional violations in other mandatory detention contexts. *See, e.g., Lopez-Arevelo v. Ripa*, No. 3:25-CV-00337-KC, 2025 WL 2691828 at *7 (W.D. Tex. Sept. 22, 2025). In *Lopez-Arevelo*, for example, the district court not only improperly disregarded pertinent jurisdictional arguments and the impact and scope of *Thuraissigiam*, but the court also performed only a cursory review of the pertinent decisions regarding as-applied challenges in other mandatory detention contexts. *See id*. at *8. After rejecting the government's jurisdictional arguments (that courts are precluded from reviewing actions arising from decisions to commence or adjudicate removal proceedings in the first place), *Lopez-Arevelo* attempted to distinguish as-applied prolonged detention challenges, noting that "Lopez-Arevelo challenges the decision to subject him to mandatory detention under § 1225(b) *at all*…". *Id*. at *9 (emphasis added). But § 1252(g) was intended to bar exactly such a claim: a challenge to the decision to detain an alien "at all" under § 1225(b) for the purpose of adjudicating the pending removal proceedings against him.

Perhaps more problematic is *Lopez-Arevelo's* wholesale rejection of *Thuraissigiam*. *Id*. at *8 (comparing the challenged "denial of his asylum claim" with Lopez-Arevelo's challenge to "his detention in immigration custody"). *Lopez-Arevelo* reasoned that *Thuraissigiam's* use of the specific phrase, "regarding admission," to define the scope of the alien's limited due process rights in that case diminishes its value in reviewing actual detention claims arising in habeas. *Id*. (finding that *Thuraissigiam* did not address whether aliens detained under § 1225(b) "have a constitutional due process right to challenge the fact or the length of their detention, as Lopez-Arevelo does here"). This is too narrow of a reading.

The Supreme Court in *Thuraissigiam* plainly stated that even if he had tried, the alien could not have disputed the lawfulness of his continued confinement under § 1225, because he lacked an entry document. *Thuraissigiam*, at 118–19. Such a claim would fail "even during the additional proceedings" he was seeking, because "simply releasing him would not provide the right to stay in the country…". *Id*. Indeed, if the alien in that case had sought any cognizable habeas relief, the only relief he would have been given was release "in the cabin of a plane bound for Sri Lanka." *Id*. at 119. Rather than following recent decisions that have not yet received full judicial review, Respondents urge this Court to review persuasive decisions analyzing the constitutionality of continued detention during removal proceedings under similar mandatory detention provisions. *See, e.g., Rimtobaye v. Castro*, No. SA–23–CV–1529–FB (HJB), 2024 WL 5375786 (W.D. Tex. Oct. 29, 2024) (no constitutional violation for alien detained for two years on a mandatory basis under § 1226(c) during removal proceedings); *Meme v. Immigr. & Customs Enf't*, No. 23–CV–00233, 2023 WL 6319298 at *4 (W.D. Tex. 2023) (no constitutional violation for alien detained for 14 months on a mandatory basis under § 1226(c) during removal proceedings).[5]

In *Rimtobaye*, the court meaningfully reviewed the split in the circuit courts on how as applied constitutional claims of prolonged detention should be analyzed, where the controlling statute prohibits a bond hearing. *Id*. at *2–*3 (collecting cases and comparing the different constitutional analyses from the Third, Second, and Eighth Circuits, with the Supreme Court's *Mathews* Test and the Fifth Circuit's unpublished 2022 decision in and *Weseka v. U.S. Att'y*, No.

---

[5] Although *Rimtobaye* and *Meme* involved criminal aliens detained under § 1226(c), as opposed to applicants for admission under § 1225(b), the analysis in those cases is no less persuasive here. *See El Gamal*, 2025 WL 1857593 at *3–5 (noting that as-applied challenges to continued detention under the mandatory detention provisions of § 1226(c) have been permitted, but finding no jurisdiction to review a constitutional claim by alien detained without bond on a discretionary basis under § 1226(a) during removal proceedings).

22–10260, 2022 WL 17175818 (5th Cir. Nov. 22, 2022)). The *Rimtobaye* court ultimately found that the Eighth Circuit's constitutional analysis in *Banyee* more closely aligned with the Fifth Circuit's unpublished *Wekesa* decision than did the Third or Second Circuit's analysis. *Id*. at \*3 (citing *Banyee v. Garland*, 115 F.4th 928, 931 (8th Cir. 2024) and explaining that *Baynee* rejected balancing tests for determining the constitutionality of continued detention during removal proceedings, because any such detention is constitutionally valid so long as it has a definite termination point, like physical removal or release from detention due to a grant of relief). Like *Banyee*, the *Rimtobaye* court found that where the detention statute provides for mandatory detention until removal proceedings have concluded, there is no constitutional entitlement to a bond hearing during those removal proceedings. *Id*. (also citing *Petgrave v. Aleman*, 529 F.Supp. 665, 674 (S.D. Tex. 2021)).

In other words, just like the Supreme Court recognized in *Jennings*, the *Rimtobaye* court reiterated that aliens detained under certain statutes "are not entitled to be released under any circumstances other than those expressly recognized by statute." *Id*. at \*3 (citing *Jennings*, 583 U.S. at 303, and *Weseka*).[6] Due process does not require Petitioner to be afforded a bond hearing, because § 1225(b) does not provide one to him during removal proceedings. *See Chavez v. Noem*, No. 3:25-CV-02325-CAB-SBC, 2025 WL 2730228 (S.D. Cal. Sept. 24, 2025); *Vargas Lopez v. Trump*, No. 8:25-cv-00526-BCB-RCC, 2025 WL 2780351 (D. Neb. Sept. 30, 2025).

Petitioner's removal proceedings have a definite termination point, and before that point, he may seek judicial review of any adverse decision. Any constitutional claims he may have can

---

[6] The *Rimtobaye* court also analyzed the claim in the alternative using the Second and Third Circuits' balancing test and found that the constitutional claim should still be denied. *Id*. at n.2 (finding that "prolonged detention does not rise to the level of a due process violation authorizing habeas relief" where the alien, through counsel, had "been actively litigating his immigration rights before multiple courts" and where he had caused some of the delays himself).

19

and should be funneled through the circuit court alongside review of any final order of removal. Pre-removal-order detention is both statutorily permissible and facially constitutional, and it is neither indefinite nor prolonged in this case.

### V.    Conclusion

Petitioner is lawfully detained in removal proceedings, and he does not claim any immigration status that would entitle him to immediate release from custody. His deferred action status was terminated, and he is in "full" removal proceedings with robust due process protections, which include the opportunity to seek judicial review through the circuit court of appeals. Accordingly, the Court should deny this petition.

Respectfully submitted,

Justin R. Simmons
United States Attorney

By:    */s/ Fidel Esparza, III*
Fidel Esparza, III
Assistant United States Attorney
Texas Bar No. 24073776
601 N.W. Loop 410, Suite 600
San Antonio, Texas 78216
(210) 384-7026 (phone)
(210) 384-7358 (fax)
Fidel.Esparza@usdoj.gov

Attorneys for Federal Respondents