**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**

| | |
|---|---|
| **TEYLLON SOUZA VIEIRA** | ) |
| Petitioner, | ) |
| | ) |
| v. | )     Case No. 3:25-cv-00432-DB |
| | ) |
| **MARY DE-ANDA-YBARRA**, et. al. | ) |
| Respondents. | ) |
| | ) |

## I.    PETITIONER'S REPLY TO RESPONSE TO PETITIONER'S WRIT OF HABEAS CORPUS

1. Petitioner, Teyllon Souza Vieira (hereinafter referred to as "Teyllon," "Mr. Souza Vieira," or "Petitioner") respectfully replies to Respondents' Response to Petitioner's Writ of Habeas Corpus ("Respondents' Response") filed on October 3, 2025. Doc. 7.

## II.    SUMMARY OF RESPONSE TO HABEAS

2. Respondents state that Petitioner is subject to mandatory detention without a bond hearing under U.S.C. § 1225(b)(2). They also claim that this Court lacks jurisdiction to hear Petitioner's habeas petition because sections 1252(g) and 1252(b)(9) allegedly deprive the federal court of jurisdiction. *See* Doc. 7 at *11-15.

3. Furthermore, Respondents claim that Section 1225(b) is not unconstitutional as applied to Petitioner, because the "statute does not entitle him to a bond hearing." *See* Doc 7 at *15.

4. In sum, Respondents' position is that they are entitled to detain Petitioner indefinitely, without giving him an opportunity for a bond hearing, and that these circumstances do not qualify as a violation of constitutional protections.

1

5. For the reasons presented in the Habeas Petition and the arguments hereinafter, Respondents' claims should not prevail. Their position is not only legally incorrect and based on several inaccuracies, misinterpretations of the law, and purported ignorance of federal law and legal precedent, but it is also dangerous and undermines constitutional protections that have been in place since the foundation of the country.

## III.    LEGAL ANALYSIS

### i.    Petitioner is not lawfully detained as an applicant for admission, and Respondents' interpretation of the statute does not have any legal basis

6. Petitioner entered the country on August 17, 2022. *See* Ex. A of Doc. 1. He was apprehended by Customs and Border Patrol ("CBP") and placed in removal proceedings. *See* Ex. B of Doc. 2. He was then released upon recognizance by CBP and moved to Massachusetts. *See* Ex. C of Dec. 2. He filed Form I-360 with USCIS, which was approved on February 18, 2025. *See* Ex. E of Doc. 2. He then had his proceedings before the Immigration Court terminated by the Immigration Judge on May 6, 2025, without objection of the Department of Homeland Security ("DHS"). He was detained by Respondents on September 11, 2025.

7. Despite Petitioner's long history in the United States, which includes a prior detention and release, termination of his removal proceedings, and approval of an application that will eventually grant him an opportunity to adjust status to lawful permanent resident, Respondents argue that Petitioner is an "applicant for admission" and subject to mandatory detention without access to a bond hearing. To support this claim, Respondents present two legal cases: *Matter of Yajure-Hurtado*, 29 I&N Dec. 216 (BIA 2025), and *Jennings v. Rodriguez,* 583 U.S. 281, 299 (2018).

2

8. The first case is from the Board of Immigration Appeals ("BIA"), a part of the Executive Office for Immigration Review ("EOIR"), which operates under the Department of Justice ("DOJ") authority. The DOJ recently adopted the novel position of DHS that mandatory detention applies to all noncitizens who did not enter the country through lawful means.[1] One of the measures of the current administration has been to reduce the number of judges at the BIA from 28 to 15, ensuring that most of the judges currently serving on the board were appointed by the administration, either during this term or in the prior one.[2][3]

9. The BIA in *Matter of Yajure-Hurtado* states that aliens present in the United States without admission are deemed "applicants for admission," and therefore, the Immigration Court does not have jurisdiction to hear "bond requests or grant bond to aliens who are present in the United States without admission." *See Matter of Yajure-Hurtado*, 29 I&N Dec. 216 (BIA 2025).

10. Based on Respondents' interpretation of the law in *Matter of Yajure-Hurtado* and of sections 1225(g) and 1252(b)(9), if a person entered the country without admission (regardless of how long he has been in the country, his immigration history, and whether the government violated constitutional protections to detain that person), the government is entitled to detain that person for as long as they see fit, transfer them wherever they want, and that person is not entitled to seek a bond motion before the immigration court, nor seek relief before the federal court.

---

[1] The interpretation was adopted on July 8, 2025, when Acting Director of U.S. Immigration and Customs Enforcement ("ICE"), Todd M. Lyons, issued a memorandum explaining that the agency had "revised its legal position" in "coordination with the DOJ." *See Martinez v. Hyde*, No. CV 25-11613-. BEM, 2025 WL 2084238.

[2] *Reducing the Size of the Board of Immigration Appeals*, 90 Fed. Reg. 15,525 (Apr. 14, 2025).

[3] Adriel Orozco, *While Federal Firings Focus on Immigration Processing, Funding for Immigration Enforcement Expands*, AM. IMMIGRATION COUNCIL (Mar. 6, 2025), https://www.americanimmigrationcouncil.org/blog/federal-firings-immigration-processing-enforcement-expands/

11. The second legal case cited by Respondents is *Jennings v. Rodriguez,* 583 U.S. 281, 299 (2018), which was only reinterpreted by DHS two months ago. *See Diaz Martinez*, 2025 WL 2084238, at *4–5 & nn.9–11 (D. Mass. July 24, 2025). This novel interpretation is contrary to "the agency's own implementing regulations, *id.* at 6 & nn.14, 16; its published guidance, *id.* at 8; the decisions of its immigration judges (until very recently), *id.*; decades of practice, *id.* at 4 & nn.9–11; the Supreme Court's gloss on the statutory scheme, *id.* at 8; and the overall logic of our immigration system, *id.*" *Aguiriano Romero v. Hyde*, No. 25-cv-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025) (citing *Diaz Martinez*, 2025 WL 2084238, at *4–5 & nn.9–11 (D. Mass. July 24, 2025).

12. First, such an interpretation of *Jennings* ignores important parts of the decision where the Supreme Court makes a clear distinction between noncitizens who are detained while entering the country and noncitizens who are already present in the United States. *Jennings v. Rodriguez*, 804 F. 3d 106. The opinion states that "§ 1226 applies to aliens already present in the United States" and that "§ 1226(a) authorizes the Attorney General to arrest and detain an alien 'pending a decision on whether the alien is to be removed from the United States.'" § 1226(a). As long as the detained alien is not covered by § 1226(c), the Attorney General may release the alien on bond or conditional parole. § 1226(a). Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention. *See* 8 CFR §§ 236.1(d)(1), 1236.1(d)(1).

13. Respondents' interpretation that Petitioner is an "applicant for admission", and is detained under 8 U.S.C. § 1225, and not under 8 U.S.C. § 1226, is contrary "to the

4

plain text of the statute and the overall statutory scheme." *Aguiriano Romero v. Hyde*, No. 25-cv-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *also Diaz Martinez v. Hyde*, — F. Supp. 3d —, 2025 WL 2084238 (D. Mass. July 24, 2025); *see also, e.g.*, *Rodriguez Vazquez v. Bostock*, — F. Supp. 3d —, 2025 WL 1193850 (W.D. Wash. Apr. 24, 2025) (holding same); *Gomes v. Hyde*, 2025 WL 1869299 (D. Mass. July 7, 2025) (same); *Garcia v. Hyde*, Civ. No. 25-11513 (D. Mass. July 14, 2025) (same); *Rosado v. Bondi*, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025) (same), *report and recommendation adopted without objection*, 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Lopez Benitez v. Francis*, — F. Supp. 3d —, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025) (same); *dos Santos v. Lyons*, 2025 WL 2370988 (D. Mass Aug. 14, 2025) (same); *Aguilar Maldonado v. Olson*, 2025 WL 2374411 (D. Minn. Aug. 15, 2025) (same); *Escalante v. Bondi*, 2025 WL 2212104 (D. Minn. July 31, 2025) (granting preliminary relief after positively weighing likelihood of success), *report and recommendation adopted sub nom. O. E. v. Bondi*, 2025 WL 2235056 (D. Minn. Aug. 4, 2025); *Arrazola-Gonzalez v. Noem*, 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025) (granting individualized bond hearings on *ex parte* motion for temporary restraining order after finding likelihood of success); *Garcia Jimenez v. Kramer*, 2025 WL 2374223 (D. Neb. Aug. 14, 2025) (granting relief from stay of bond order pending BIA appeal); *Mayo Anicasio v. Kramer*, 2025 WL 2374224 (D. Neb. Aug. 14, 2025) (same); *Rodrigues De Oliveira v. Joyce*, 2025 WL 1826118 (D. Me. July 2, 2025) (recognizing disagreement as to the detention statutes and granting habeas petition on due process grounds). *But see Pena v. Hyde*, 2025 WL 2108913 (D. Mass. July 28, 2025.

14. Recently, the Western District Court of Texas has issued a decision that supported the Petitioner's claim. *Santiago v. Noem*, No. EP-25-CV-361-KC (W.D. Tex. Oct. 7, 2025). The Court decided on a similar case of an individual who had a pending case before that granted him deferred action that his detention was unlawful. *Id.* The Court rejected the Respondents' arguments related to Sections 1252(g) and 1252(b)(9), also reaffirmed the Petitioner's due process rights in that case. *Id.* The Court makes similar arguments as the Petitioner here regarding the difference between deportability and detention, and the real effect of *Thuraissigiam. Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020).

15. Petitioner has shown in his habeas petition why Respondents' interpretation of the statute here does not have any basis regardless of the interpretation proposed. The Massachusetts District Court has explained, didactically, how Respondents' position does not make sense in the structure of the statute:

> By contrast, Respondents' reading of sections 1225 and 1226 is better conceived as a contradiction. Where "Congress has created specific exceptions" to a rule, it "proves" the general applicability of that rule, absent those exceptions. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010). Thus, by creating a specific exception, disallowing bond for certain applicants for admission, Congress clearly evinced its intent that bond remain available for the remainder. At the very least, the exception demonstrates that Congress expected that the detention of some applicants for admission would be governed by section 1226. This is intuitive—imagine a set of grocery instructions:
> 1) Buy fruit.
> 2) You may buy vegetables. However, if the tomatoes look very red, then you must buy them.
> In the above example, one understands—notwithstanding any pedantic argument that tomatoes are fruit—that buying tomatoes is intended to be optional, subject to conditions that might make buying tomatoes mandatory. Likewise—notwithstanding Respondents' specious argument that applicants for admission necessarily satisfy the language of section 1225— read alongside section 1226, it is clear that those individuals are intended to

be subject to the latter instruction. *Aguiriano Romero v. Hyde*, No. 25-cv-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025).

16. Also, the documents issued by Respondents regarding Petitioner's detention and immigration history **do not** mention section 1225, but rather section 1226. The Order of Release on Recognizance specifically cites section 236 (referred here as section 1226) of the Immigration and Nationality Act ("INA"), not section 235 (referred here as section 1225). *See* Ex. C of Doc. 2. The warrant for Petitioner's arrest also cites section 236 of INA, as opposed to section 235. *See* Ex. A of Doc. 2. The original Notice to Appear ("NTA"), which was issued following Petitioner's entry into the United States in 2022, also do not mention that Petitioner is an applicant for admission, but rather charges him with being "an alien present in the United States without being admitted or paroled." *See* Ex. B of Doc. 2.

17. Because Petitioner's removal proceedings with the Immigration Court were terminated, Respondents had to file a new NTA to reinitiate removal proceedings. This NTA was issued on September 12, 2025. However, following the filing of Petitioner's habeas, Respondents issued another NTA on October 2, 2025, containing contradictory charges against Petitioner. *See* Ex. B of Doc. 7. Respondents now charge Petitioner with both being "an alien present in the United States without being admitted or paroled", and – at the same time – charging him with being "an immigrant who, at the time of application for admission, is not in possession of a valid unexpired visa." *See* Ex. B of Doc. 7.

18. **All of the following support Petitioner's position that he is being detained under section 1226**: a) the plain text of the law; b) several federal district court decisions; c) applicable statutory interpretations that have been generally used by Courts; d) the

general structure of the statute itself; e) the legislative history of the statute and the applicability of the section; f) longstanding practice by DHS (prevailing for more than twenty years) regarding the applicability of this section; and g) all the documents created by DHS related to Petitioner's detention – not including constitutional protections, favorable case law, and common sense. In favor of Respondents' position, there is only a recently changed interpretation caused by a governmental position that is focused on expanding noncitizens' removal, even if ignoring federal law, due process or constitutional protections.

19. Respondents' Response also has ***concerning factual inaccuracies***. Respondents' response states that "[t]he Court should reject Petitioner's interpretation because it rewards aliens like him who unlawfully lived—undetected—in the interior of the United States after crossing the border without permission, by making them bond-eligible, unlike arriving aliens, "who present themselves for inspection at a port of entry." *See* Doc. 7 at \*10. **This claim is absurd**, as Petitioner has made every effort to comply with the law, and Respondents are – in fact – those who are using abuse of power to overrule proper proceedings.

20. Petitioner was allowed to enter the United States by CBP officers following his entry into the United States. *See* Ex. C of Doc. 1. Shortly after his arrival, Petitioner began the process to obtain legal permanent residency as a special immigrant juvenile. His petition was approved by USCIS, and he was granted deferred action. *See* Ex. E of Doc. 2. Then, he filed a motion to terminate proceedings before the Immigration Court – which DHS did not oppose – and so his proceedings were terminated. *See* Ex. F.

21. Instead of opposing Petitioner's motion to terminate before the Immigration Court, or simply appealing the Immigration Judge's decision, DHS chose to detain Petitioner, remove his deferred action status, transfer him across the country, and restart his removal proceedings with a different immigration court. As part of this process, they first issued an NTA on September 12, 2025, before reissuing it on October 2, 2025, with contradictory charges that attempt to justify Petitioner's indefinite detention.

22. Furthermore, Respondents argue that not only should Petitioner be detained indefinitely without an opportunity for a bond hearing before the Immigration Court, but that he should not be able to file a habeas petition in federal court, stating that this Court lacks jurisdiction to hear the case. This is not correct.

23. First, Respondents argue that Section 1252(g) deprives courts of jurisdiction to review "any cause or claim by or on behalf of an alien arising from the decision or action by the Attorney General to [1] commence proceedings, [2] adjudicate cases, or [3] execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). *See* Doc 7 at *11. Respondents' claim does not have any basis, since the habeas petition is not related to the commencement of proceedings against Petitioner, but rather to his **unlawful detention.** Respondents could have begun proceedings against Petitioner – as they did in the past – without detaining him unlawfully. Section 1252(g) does not deprive the court of jurisdiction to hear this habeas petition.

24. Second, Respondents argue that Section 1252(b)(9) requires exhaustion of remedies in order for Petitioner to question his unlawful detention in federal court. That claim is incorrect, as § 1252(b)(9) applies to questions regarding the revision of due process in the removal proceedings, or of the removal order itself, but it is not related to revision

9

of noncitizen's detention. This matter was already decided by the Supreme Court in

*Jennings v. Rodriguez*, 583 U.S. 830 (2018). In *Jennings,* the Supreme Court analyzed

the same arguments raised by Respondents, concluding:

> This provision does not deprive us of jurisdiction. We are required in this case to decide "questions of law," specifically, whether, contrary to the decision of the Court of Appeals, certain statutory provisions require detention without a bond hearing. We assume for the sake of argument that the actions taken with respect to all the aliens in the certified class constitute "action[s] taken . . . to remove [them] from the United States."[3] On that assumption, the applicability of §1252(b)(9) turns on whether the legal questions that we must decide "aris[e] from" the actions taken to remove these aliens. It may be argued that this is so in the sense that if those actions had never been taken, the aliens would not be in custody at all. **But this expansive interpretation of §1252(b)(9) would lead to staggering results**. Suppose, for example, that a detained alien wishes to assert a claim under *Bivens* v. *Six Unknown Fed. Narcotics Agents*,403 U. S. 388 (1971), based on allegedly inhumane conditions of confinement. See, *e.g., Ziglar* v. *Abbasi*, 582 U. S. \_\_\_, \_\_\_–\_\_\_ (2017) (slip op., at 23–29). Or suppose that a detained alien brings a state-law claim for assault against a guard or fellow detainee. Or suppose that an alien is injured when a truck hits the bus transporting aliens to a detention facility, and the alien sues the driver or owner of the truck. The "questions of law and fact" in all those cases could be said to "aris[e] from" actions taken to remove the aliens in the sense that the aliens' injuries would never have occurred if they had not been placed in detention. **But cramming judicial review of those questions into the review of final removal orders would be absurd**. (emphasis added.) *Jennings v. Rodriguez*, 583 U.S. 830 (2018).

25. In addition, federal regulation separates removal proceedings from custody proceedings. 8 C.F.R. § 1003.19(d). Respondents' proposed interpretation creates a presumption that an individual can only be in removal proceedings if he is in custody, which is simply not true. The removal proceedings are a separate matter from the custody determination, and there is nothing in the statute that prevents federal courts from exercising jurisdiction regarding claims of unlawful detention – even if allegedly related to immigration matters.

    ii.    **Petitioner's detention is unconstitutional**

26. Finally, Respondents argue that Petitioner's detention is constitutional and does not violate the Fifth Amendment due process clause. To support that assertion, Respondents state that Petitioner is "only entitled to the protections set forth by statute and that 'due process clause provides nothing more.'" *See* Doc. 7 at *15-18.

27. Respondents cite several Supreme Court cases that actually support Petitioner's claim, as these cases all conclude that noncitizens only have limited rights at their *initial entry*. Most of these cases were already presented by Petitioner in his initial brief. However, Respondents cited *Thuraissigiam* extensively in their Response. *See Department of Homeland Security v. Thuraissigiam,* 591 U.S. 199, 220 (2020).

28. In *Thuraissigiam*, the Court reinforces the limited protections for individuals seeking **initial entry to the United States**. *Id*. (emphasis added). However, it creates a clear distinction between noncitizens who are trying to enter the country from those who have already entered the country and have established ties to the U.S. *Id.* The Supreme Court concludes that "an alien who is detained shortly after unlawful entry cannot be said to have 'effected an entry'... For due process purposes, he stands on the threshold of initial entry, and his constitutional rights are limited accordingly." *Id* at 1982-1983. The Supreme Court in *Thuraissigiam* reaffirmed *Landon v. Plasencia* and *Zadvydas*, stating that "while aliens who have established connections in this country have due process rights in deportation proceedings, the same is not true for an alien at the threshold of initial entry" *Id.* at 1983; *also Landon v. Plasencia,* 459 U.S. 21 (1982) and *Zadvydas v. Davis*, 533 U.S. 678 (2001).

29. The present case is not about a Petitioner who was apprehended "on the threshold of entry," but rather about someone who has been living in the United States since August

of 2022. *Id.* *"Once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."* *See Zadvydas v. Davis,* 533 U.S. 693 (2001).

30. Respondents' proposed interpretation of the law violates the Due Process Clause because it effectively denies its application to all noncitizens who are present in the United States if the government claims that they have entered the country unlawfully. As stated, the Supreme Court has recognized on several occasions that the due process clause applies to all individuals present in the United States, and the only exception it has made is for individuals who were apprehended "on the threshold of initial entry." *See Department of Homeland Security v. Thuraissigiam,* 591. This is simply not the case for Petitioner.

31. To deny Petitioner's constitutional rights as defended here by Respondents would mean undermining the constitutional protections that are applicable to every person inside the country.

## PRAYER FOR RELIEF

Wherefore, Petitioner respectfully requests this Court to consider this reply to the response filed

by Respondents, and reaffirms the requests made by Petitioner's Writ of Habeas Corpus.


Respectfully submitted,



/s/ Vinicius Damasceno

Vinicius Damasceno, Esq.
*Counsel for Petitioner*
Bar No. 706468
Celedon Law PC
277 Main Street, Ste 305
Marlborough, MA 01752
508-573-3170
vinicius@celedonlaw.com

Dated: October 7, 2025

13

**CERTIFICATE OF SERVICE**

I, Vinicius Damasceno, hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF (NEF), and paper copies will be sent to those indicated as non-registered participants.


Dated: October 7, 2025                                    /s/ Vinicius Damasceno
                                                          Vinicius Damasceno, Esq.

**Petitioner's Exhibit**

G



**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**BOSTON IMMIGRATION COURT**

Respondent Name:

    SOUZA VIEIRA, TEYLLON

To:

    Celedon, Eloa J
    277 Main Street, Suite 304
    Marlborough, MA 01752

A-Number:
241-967-927
Riders:
In Removal Proceedings
Initiated by the Department of Homeland Security
Date:
05/06/2025

### ORDER OF THE IMMIGRATION JUDGE

☑ Respondent ☐ the Department of Homeland Security has filed a motion to terminate these proceedings, and the non-moving party was accorded notice and an opportunity to respond. The motion is ☐ opposed ☑ unopposed.

After considering the facts and circumstances, the immigration court orders that the motion to terminate is ☑ granted ☐ with ☑ without prejudice ☐ denied because:

☐ The Department of Homeland Security ☐ met ☐ did not meet its burden of proving by clear and convincing evidence that Respondent is removable as charged. 8 C.F.R. § 1240.8(a).

☐ Respondent ☐ met ☐ did not meet the burden of proving that Respondent is clearly and beyond a doubt entitled to admission to the United States and is not inadmissible as charged. 8 C.F.R. § 1240.8(b)-(c).

☐ Other.

☑ Further analysis/explanation:

Pursuant to Coronado Acevedo

1

Immigration Judge: Masters, Todd 05/06/2025

Appeal:      Department of Homeland Security:   ☐   waived      ☐   reserved
             Respondent:                        ☐   waived      ☐   reserved
Appeal Due:


**Certificate of Service**

This document was served:
Via: [ M ] Mail | [ P ] Personal Service | [ E ] Electronic Service | [ U ] Address Unavailable
To: [ ] Noncitizen | [ ] Noncitizen c/o custodial officer | [ E ] Noncitizen's atty/rep. | [ E ] DHS
Respondent Name : SOUZA VIEIRA, TEYLLON | A-Number : 241-967-927
Riders:
Date: 05/06/2025 By: Rios, Bryan, Court Staff

2