IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **TEYLLON SOUZA VIEIRA,** | § | |
| Petitioner, | § | |
| | § | |
| v. | § | EP-25-CV-00432-DB |
| | § | |
| **MARY DE ANDA-YBARRA,** *ICE Field Director, et al.,* | § | |
| | § | |
| Respondents. | § | |

# MEMORANDUM OPINION AND ORDER

On this day, the Court considered Petitioner Teyllon Souza Vieira's ("Petitioner") "Petition for Writ of Habeas Corpus" ("Petition"), filed on September 29, 2025, ECF No.[1] 1. After due consideration, this Court asserts its jurisdiction over Petitioner's claims and hereby orders Petitioner's bond hearing be held in accordance with the deadlines set forth herein. For the following reasons, the Petition is granted in part.

# BACKGROUND

Petitioner is a Brazilian national who entered the United States on August 17, 2022. ECF No. 1 at 1. At the time of entry, Petitioner was detained under Section 236 of the Immigration and Nationality Act ("INA"). *See* Ex. A, ECF No. 2 at 2. Petitioner was then placed in removal proceedings and charged under INA Section 212(a)(6)(A)(i), as an "alien present in the United States without being admitted or paroled, or who arrived in the United States at any time and place other than as designated by the Attorney General." *See id.* at 3. After being placed in removal

---

[1] "ECF No." refers to the Electronic Case Filing ("ECF") number for documents docketed in this matter. When a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the page numbers assigned by the ECF system.

proceedings, Petitioner received an Order of Release on Recognizance in accordance with INA Section 236. *See* Ex. C, ECF No. 2 at 6–9.

On September 5, 2024, a Massachusetts state court, where Petitioner resided until his current detention, issued a "Judgment of Dependency", ordering Petitioner to the care and protection of the court. *See* Ex. D, ECF No. 2 at 10. The court found reunification with his mother was impossible due to abuse, neglect, or abandonment. *Id.* Based on this order, Petitioner filed Form I-360 with United States Citizenship and Immigration Services ("USCIS"), which was granted on February 18, 2025. *See* Ex E, ECF No. 2 at 14–15. Form I-360's approval granted Petitioner deferred action status, meaning that he was authorized to remain in the United States while waiting for the visa bulletin to file for his adjustment of status to become a legal permanent resident. ECF No. 1 at 5.

On May 6, 2025, Petitioner was granted termination of his removal proceedings before the Immigration Court based on his Form I-360 approval, deferred action status, and his eligibility for adjustment of status. ECF No. 1 at 5–6. The Department of Homeland Security ("DHS") did not file an opposition, a motion to reconsider, or appeal the Immigration Court's decision. *Id.* The decision became final, and Petitioner's removal proceedings were terminated. *Id.* at 6.

Nearly four months later, on September 11, 2025, Petitioner was detained by Immigration and Customs Enforcement ("ICE"). ECF No. 1 at 6. At some point, he was transferred out of Massachusetts to Camp East Montana Detention Center in El Paso, Texas, where he remains detained. *Id.* On September 12, 2025, USCIS issued a termination notice, advising Petitioner his special immigration juvenile deferred status had been terminated in the exercise of discretion,

although his SIJ status remained intact. Ex. A, ECF No. 7 at 23–24. The same day, ICE issued a Notice to Appear ("NTA") placing Petitioner back in removal proceedings. ECF No. 11 at 7. Following the filing of the instant habeas petition, Respondents issued a superseding NTA on October 2, 2025, charging him with both being "an alien present in the United States without being admitted or paroled", and with being "an immigrant who, at the time of application for admission, is not in possession of a valid unexpired visa." *See* Ex. B, ECF No. 7 at 25–28.

During the October 9, 2025, hearing[2] on the matter, Petitioner's counsel informed the Court that Petitioner requested a bond hearing before the Immigration Court that was denied based on *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). Draft Tr. at 20; see generally, ECF No. 14. According to Petitioner, this recent Board of Immigration Appeals ("BIA") decision makes it so that the immigration judge denied jurisdiction over Petitioner's bond case because Petitioner is subject to mandatory detention under Section 1225(b)(2), following BIA's new interpretation of the INA. *Id.* Petitioner warns the result is that the government may continue detaining Petitioner indefinitely without an opportunity for an independent judge to analyze his custody. ECF No. 1 at 6. In his Petition before this Court, Petitioner asks this Court to assume jurisdiction over this matter, declare that Petitioner's detention violates the Fifth Amendment's Due Process Clause and the

---

[2] Typically, courts cite to official transcripts in memorandum opinions and orders. However, due to the expeditious nature of the instant case, this Court will use a "Draft Transcript." As of the time of this writing, neither party has requested an official transcript. Several courts have addressed using draft transcripts instead of official transcripts. *See, e.g.*, *United States v. Two Gen. Elec. Aircraft Engines*, No. 14-CV-2213, 2016 WL 6495397, at *1 n.1 (D.D.C. Nov. 2, 2016); *United States v. West*, 21 F.3d 607, 608 (5th Cir. 1994); *G&G Closed Circuit Events, LLC v. La Patrona Seafood & Cantina, LLC*, No. 3:24-CV-156-DCG, 2024 WL 4100243, at *2 n.16 (W.D. Tex. Aug. 28, 2024); *In re St. Clare*, No. NC-13-1507, 2014 WL 4089344, at *3 (9th Cir. Bankr. Aug. 19, 2014).

INA, issue a writ of habeas corpus ordering Respondents to release Petitioner immediately, and award attorneys' fees. *Id.* at 22.

Pursuant to the Court's briefing schedule, Respondents filed their response, ECF No. 7, on October 3, 2025, and Petitioner replied on October 7, 2025. The Court held a hearing on the matter on October 9, 2025.

## LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl. 2). This includes immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). The petitioner seeking habeas relief must demonstrate she is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

## ANALYSIS

Respondents erroneously assert the Court is without jurisdiction to review Petitioner's asserted claims. Precedent makes clear that each of the cited provisions have no effect on the Court's jurisdiction based on the specific claims raised in this case. Further, the Court finds Petitioner's as-applied challenge under the Fifth Amendment's Due Process Clause has merit. Accordingly, Respondents must provide Petitioner with a bond hearing before an immigration judge in accordance with the orders herein or immediately release him. Lastly, because the Court finds an as-applied challenge meritorious, it declines to address Petitioner's statutory interpretation claims.

A.   Jurisdiction

As a threshold matter, the Court asserts its jurisdiction over this case. Respondents argue this Court lacks jurisdiction under two INA provisions: 8 U.S.C. §§ 1252(g) and (b)(9). ECF No. 7 at 11. For the following reasons, neither provision bars the Court from adjudicating Petitioner's claims.

Section 1252(g) prohibits federal district courts from considering "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." In this case, Respondents contend Petitioner's claims are unreviewable because his detention *arises from* the decision to commence removal proceedings against him. ECF No. 7 at 11. Respondent characterizes the pertinent agency action in this case as the "decision by the United States Department of Homeland Security to take this person into custody, cancel his deferred action status in the exercise of their discretion. . . and then plac[e] him in removal proceedings through the issuance of a NTA." Draft Tr. at 5.

The Supreme Court has already rejected Respondents' expansive reading of this jurisdiction-stripping statute. In *Reno v. American-Arab Anti-Discrimination Committee,* 525 U.S. 471 (1999), the Supreme Court explicitly determined Section 1252(g)'s jurisdiction bar only applies to the three discrete actions listed in the statute. *Id.* at 482–483. In a subsequent decision, the Supreme Court reiterated that *Reno* "did not interpret [Section 1252(g)'s] language to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, [the Court] read the language to refer to just those three specific actions

themselves." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (citing *Reno*, 525 U.S. at 482–83). Accordingly, Section 1252(g) only applies to the Attorney General's discretion to decide whether and when to prosecute or adjudicate removal proceedings or execute removal orders. *Duarte v. Mayorkas*, 27 F.4th 1044, 1055 (5th Cir. 2022) (citation omitted).

Here, Petitioner is not challenging Respondents' decision to commence removal proceedings. In fact, Petitioner rightfully conceded Respondents have the authority to commence removal proceedings against him without review from federal courts. Draft Tr. at 18. Instead, Petitioner is challenging his detention in Respondents' custody without a bond hearing pending final resolution of his removal proceedings.[3] Under these circumstances, Section 1252(g) cannot be said to present a jurisdictional bar.

The same is true of Respondents' argument regarding Section 1252(b)(9). Respondents argue Section 1252(b)(9) "divests district courts of jurisdiction to review both direct and indirect challenges to removal orders," and instead requires that such challenges be brought before courts of appeals after a final order of removal. ECF No. 7 at 14. Yet again, Respondents seek an expansive reading of a discrete statute. Under Section 1252(b)(9), "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United

---

[3] Courts are not barred from reviewing a detention order because, while it is true it is intimately related to the Government's efforts to deport, is not itself a decision to initiate removal proceedings. *Cf. Cardoso v. Reno*, 216 F.3d 512, 516–17 (5th Cir. 2000) (Section 1252(g) "does not bar courts from reviewing an alien detention order, because such an order, 'while intimately related to efforts to deport, is not itself a decision to "execute removal orders" and thus does not implicate section 1252(g).")

States under this subchapter [including §§ 1225] shall be available only in judicial review of a final order under this section." In *Jennings,* the Supreme Court rejected Respondents' position because "this expansive interpretation of § 1252(b)(9) would lead to staggering results." *Jennings*, 583 U.S. at 293. By the Supreme Court's own examples, it is clear this jurisdictional statute cannot be read to be all-encompassing. *Id.* ("Suppose, for example, that a detained alien wishes to assert a claim under *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388 (1971), based on allegedly inhumane conditions of confinement . . . [o]r suppose that an alien is injured when a truck hits the bus transporting aliens to a detention facility, and the alien sues the driver or owner of the truck. The 'questions of law and fact' in all those cases could be said to 'aris[e] from' actions taken to remove the aliens in the sense that the aliens' injuries would never have occurred if they had not been placed in detention. But cramming judicial review of those questions into the review of final removal orders would be absurd."). The Court need not draw the exact confines of Section 1252(b)(9) to determine that Petitioner's case falls squarely outside its jurisdictional bar.

  Like in *Jennings*, Petitioner is not asking for a review of an order of removal, challenging the decision to detain him in the first place or to seek removal, and not even challenging any part of the process by which his removability will be addressed. *Cf. id.* Instead, Petitioner is challenging whether certain INA provisions require his detention without a bond hearing, and whether they are being unconstitutionally applied to him. ECF No. 1 at 12. Accordingly, Section 1252(b)(9) does not present a jurisdictional bar. This Court asserts its jurisdiction over Petitioner's claims.

B.  Procedural Due Process

Turning to the merits, Petitioner alleges his detention violates the Fifth Amendment's Due Process Clause. ECF No. 1 at 17–18. Respondents argue Petitioner has no procedural due process claim because he is subject to mandatory detention under Section 1225(b)(2)[4], and he is not entitled to any more process than the statute gives him. ECF No. 7 at 15–16.

1. *Petitioner is entitled to the Fifth Amendment's Due Process Clause protections.*

The Fifth Amendment's Due Process Clause forbids the government to "depriv[e]" any "person ... of ... liberty ... without due process of law." U.S. CONST. amend V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. David*, 533 U.S. 678, 690 (2001) (citing *Foucha v. Louisiana,* 504 U.S. 71, 80 (1992)). The Supreme Court "has said that government detention violates that Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections, *see United States v. Salerno,* 481 U.S. 739, 746 (1987), or, in certain special and 'narrow' nonpunitive 'circumstances,' *Foucha,* 504, U.S. at 80, where a special justification, such as harm-threatening mental illness, outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" *Kansas v. Hendricks,* 521 U.S. 346, 356 (1997). *Id.*

Respondents first contend Petitioner has no claim of right under the Fifth Amendment's Due Process Clause because he is only entitled to the due process provided to him under the INA.

---

[4] This section is titled "Inspection of other aliens," and generally provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A).

8

ECF No. 7 at 15–16. In their view, Petitioner is not entitled to more process than what Congress provided him by statute, regardless of whether the applicable statute is § 1225(b) or § 1226(a) because he is in full removal proceedings and the statue provides him robust due process protection. *Id.* Respondents cite to *Dept. of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020) to support their position. But, this Court agrees with the line of other courts that have found *Thuraissigiam* is not preclusive on the facts of this case because (1) Petitioner is not challenging his removal, but rather his detention during removal, and (2) he was not detained at the border on the threshold of initial entry, but rather after living in the United States for years.

In *Thuraissigiam*, the Supreme Court held "[m]ore than a century of precedent establishes that, for aliens seeking initial entry, 'the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law.'" *Thuraissigiam*, 591 U.S. at 104. The petitioner in that case had been detained after making it 25 yards into U.S. territory, and the Court made clear that an individual detained shortly after unlawful entry cannot be said to have "effected an entry." *Id.* In declining an as-applied constitutional challenge to Section 1252(e)(2), the Court reasoned that "[w]hile aliens who have established connections in this country have due process rights in deportation proceedings, the Court long ago held that Congress is entitled to set the conditions for an alien's lawful entry into this country and that, as a result, an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause." *Id.* at 107.

Respondents urge the Court to find *Thuraissigiam* squarely rejects an as-applied challenge in this context. In doing so, Respondents argue the reasoning of our sister court on similar facts

9

was wrongfully decided. ECF No. 7 at 17. In their view, *Lopez-Arevelo v. Ripa*[5] "improperly disregarded . . . the impact and scope of *Thuraissigiam*." *Id.* Respondents argue that the Supreme Court in *Thuraissigiam* "plainly stated that even if he had tried, the alien could not have disputed the lawfulness of his continued confinement under § 1225, because he lacked an entry document. . . [s]uch a claim would fail 'even during the additional proceedings' he was seeking, because 'simply releasing him would not provide the right to stay in the country'. . . [i]ndeed, if the alien in that case had sought any cognizable habeas relief, the only relief he would have been given was release "in the cabin of a plane bound for Sri Lanka." *Id.* at 18. (citations omitted).

But this Court agrees with the *Lopez-Arevelo* court that *Thuraissigiam* is distinguishable. In Petitioner's case there are several critical distinctions: (1) *Thuraissigiam*, in fact, did not address whether noncitizens detained under Section 1225(b) have a constitutional due process right to challenge the fact or the length of their detention, leaving the issue open for lower courts to consider, (2) *Thuraissigiam* was seeking a second opportunity to apply for asylum through habeas, not his release like Petitioner, (3) *Thuraissigiam* was subject to expedited removal proceedings, meanwhile Petitioner is in full removal proceedings and has no final order of removal, and (4) *Thuraissigiam* was apprehended 25 yards into U.S. territory on the threshold of initial entry, meanwhile Petitioner was paroled into the United States, previously released on bond, and has established years of presence in the United States. *See generally* ECF No. 1 at 4–7; *Thuraissigiam*, 591 U.S. at 114.

---

[5] *Lopez-Arevelo v. Ripa*, No. 3:25-CV00337-KC, 2025 WL 2691828 at *7 (W.D. Tex. Sept. 22, 2025).

Lastly, Respondents' argument regarding the only relief available to *Thuraissigiam* was release for "a plane bound for Sri Lanka" is misguided here. ECF No. 7 at 18. It is critically important to recognize Petitioner is in full removal proceedings, with presumably some immigration relief available to him[6], unlike *Thuraissigiam* who was subject to expedited removal after unsuccessful asylum claims. *See Thuraissigiam*, 591 U.S. at 114. Moreover, because Petitioner is challenging his detention during removal proceedings, "the choice, however, is not between imprisonment and the alien 'living at large[,]' [citation omitted] [i]t is between imprisonment and supervision under release conditions that may not be violated." *Zadvydas*, 533 U.S. at 696.

Moreover, Respondents' position overlooks the well-established "distinction between an alien who has effected an entry into the United States and one who has never entered [that] runs throughout immigration law." *Zadvydas*, 533 U.S. at 693. "[O]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* (collecting cases). Even in *Thuraissigiam*, the core point of the Court's analysis in rejecting an as-applied challenge rested on the fact that as an individual who was on the initial threshold of

---

[6] Petitioner was granted a Form I-360, Petition for Special Immigrant Juvenile, which previously allowed deferred action, meaning he was authorized to remain in the United States while waiting for a visa bulletin to file for his adjustment of status and become a legal permanent resident. ECF No. 1 at 1–2; *see also* Draft Tr. at 21 (explaining Petitioner is eligible to apply for adjustment of status as soon as his visa bulletin priority date is called). Petitioner remains eligible to file for adjustment of status despite being issued a Termination Notice. Ex. A, ECF No. 7 at 21 ("USCIS approved your Form I-360, which granted you SIJ classification on February 18, 2025, and it remains granted. Deferred action is a discretionary determination, however to defer immigration enforcement action against an individual as an act of prosecutorial discretion.").

entry, he wasn't entitled to more due process than that afforded by statute. Precedent and logic tell us that those individuals who have established ties in the country are protected by constitutional procedural due process. After all, it is a "well established" rule "that the Fifth Amendment entitles aliens to due process of law." *Trump v. J. G. G.*, 145 S. Ct. 1003, 1006 (2025). Here, it is undisputed Petitioner has lived in the United States since his initial entry in 2022. ECF No. 1 at 1. Petitioner "was not detained while crossing the border, but while living in the United States and waiting to receive lawful status as a special immigrant juvenile." *Id.* at 21. Petitioner is entitled to the Fifth Amendment's Due Process Clause protections.

> 2. *Based on Mathews v. Eldrige, Section 1252(b)(2) is unconstitutional as applied to Petitioner.*

Finding Petitioner is entitled to some due process protection under the Fifth Amendment, the question becomes how much. Petitioner argues Section 1252(b)(2) is unconstitutional as applied to him because "it is well-established that individuals released from incarceration have a liberty interest in their freedom." ECF No. 1 at 22. Petitioner argues he acquired a protected liberty interest following his release from detention in 2022 when the immigration judge released him on bond and ultimately terminated his removal proceedings. *Id.* "To protect that interest, due process requires notice and a hearing, before any re-arrest, at which hearing the individual is allowed to advance their arguments as to why their release should not be revoked." *Id.* Respondents argue "due process does not require Petitioner to be afforded a bond hearing, because Section 1225(b) does not provide one to him during removal proceedings." ECF No. 7 at 19. For reasons already discussed, Respondents arguments are misplaced.

The Supreme Court's balancing test in *Mathews v. Eldrige* is dispositive. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors": (1) "the private interest that will be affected by the official action"; (2) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail," and (3) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Id.* at 335.

The first *Mathews* factor weighs in Petitioner's favor. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. A noncitizen's interest in his freedom pending the conclusion of his removal proceedings deserves great "weight and gravity." *See Addington v. Texas*, 441 U.S. 418, 427 (1979); *Landon v. Plasencia*, 459 U.S. 21, 34 (1982). Courts have held that once released from immigration custody, noncitizens acquire a "protectable liberty interest in remaining out of custody on bond." *See Lopez-Arevelo*, 2025 WL 2691828 at *11 (citation omitted) (collecting cases). Petitioner has lived in the United States since 2022 and was previously released on bond during now-terminated removal proceedings. He was recently put back into removal proceedings through the issuance of a superseding notice to appear. ECF No. 7 at 1–2. Accordingly, he possesses a cognizable interest in his freedom from detention that deserves great weight and gravity.

Turning to the second *Mathews* factor, which also weighs in favor of Petitioner. Here, the Court considers "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. Respondents, of course, have a generalized interest in ensuring noncitizens appear for their removal hearings and do not pose a risk to the communities in which they live. But that interest, in this case, seems particularly diluted given Respondents' own decision to release Petitioner on his own recognizance once before. *See* ECF No. 2 at 6–9. Further, there are no facts in the record to suggest there have been material changes to Petitioner's actions in appearing for any immigration related matters, nor that he has since acquired a criminal record to jeopardize the safety of others while released. If Respondents have such facts, a bond hearing now would squarely address any such issues. Further, any fiscal or administrative burdens Respondents may assert by having to provide a bond hearing are also diminished given Respondents concede the government has conducted such hearings for the past thirty years until a change in the agency's interpretation of the law. Draft Tr. at 7 ("[I]t's not lost on me that this issue has been interpreted differently for the past 30 years . . . by the agency."). Accordingly, this factor weighs in favor of Petitioner.

Lastly, the third *Mathews* factor also weighs in favor of Petitioner. This calls for the Court to consider "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. Here, Section 1225(b)(2) as applied creates a substantial risk of erroneous deprivation of Petitioner's interest in being free from arbitrary confinement pending resolution of his removal

proceedings. The risk lies in the automatic continued deprivation of liberty for a noncitizen who has already been determined to not be a flight risk nor a danger to the community, and has lived in the United States for a prolonged period of time, especially where there are no facts in the record to reflect material changes in Petitioner's dangerousness or flight risk. Lastly, the value of additional safeguards is high given that it will allow an immigration judge conducting a bond hearing to make a determination on specific facts whether continued detention is necessary to ensure presence at removal hearings and safety for the community. In sum, Section 1225(b)(2) as applied to Petitioner violates his Fifth Amendment Due Process rights.

C.     Remedy

Petitioner sets forth the appropriate remedy is his immediate release. ECF No. 1 at 22. While courts grappling with the appropriate remedy in similar cases have in fact ordered immediate release, this Court will instead order a bond hearing before an immigration judge first. Given an immigration judge has decided it lacks jurisdiction to hold a bond hearing for Petitioner once before, the Court will afford Respondents this opportunity, but should Respondents continue to disclaim the jurisdiction to do so, Petitioner must be immediately released.

Further, at said bond hearing, the government shall bear the burden[7] of justifying Petitioner's continued detention during the pendency of his removal proceedings by clear and

---

[7] *See Lopez-Arevelo*, 25 WL 2691828 at *12 (noting that "as of 2020, the 'vast majority'—an 'overwhelming consensus'—of courts granting immigration detainees' habeas petitions have placed the burden on the Government to prove by clear and convincing evidence that the detainee poses a danger or flight risk. *Velasco Lopez*, 978 F.3d at 855 n.14 (citations omitted). Allocating the burden in this manner reflects the concern that '[b]ecause the alien's 27 potential loss of liberty is so severe . . . he should not have to share the risk of error equally.'" (quoting *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 214 (3d Cir. 2020)).

convincing evidence. Several courts have followed this course of action in similar habeas cases. *See e.g. Lopez-Arevelo*, 2025 WL 2691828 at *12–13; *Velasquez Salazar v. Dedos*, No. 25-CV-835, 2025 WL 2676729, at *9 (D.N.M. Sept. 17, 2025); *Morgan v. Oddo*, No. 24-CV-221, 2025 WL 2653707, at *1 (W.D. Pa. Sept. 16, 2025); *J.M.P. v. Arteta*, No. 25-CV-4987, 2025 WL 2614688, at *1 (S.D.N.Y. Sept. 10, 2025); *Espinoza*, 2025 WL 2581185, at *14; *Arostegui-Maldonado v. Baltazar*, 2025 WL 2280357, at *12 (D. Colo. Aug. 8, 2025).

## CONCLUSION

For the reasons stated above, this Court determines it has jurisdiction over the instant matter, and Petitioner has established a violation of the Fifth Amendment's Due Process Clause as applied to him. Accordingly, the following orders shall issue:

**IT IS HEREBY ORDERED** the Petitioner Teyllon Souza Vieira's "Petition for Writ of Habeas Corpus," ECF No. 1, is **GRANTED IN PART**.

**IT IS FURTHER ORDERED** Respondents **SHALL PROVIDE** Petitioner with a bond hearing before an immigration judge **no later than October 30, 2025** at which the government shall bear the burden of justifying, by clear and convincing evidence, the dangerousness or flight risk for Petitioner's continued detention; or (2) release Petitioner from custody, under reasonable conditions of supervision, during the pendency of his removal proceedings.

**IT IS FURTHER ORDERED** Respondents **SHALL FILE** an advisory informing the Court when the bond hearing will be held in accordance with the preceding order **no later than October 23, 2025**.

**IT IS FINALLY ORDERED** Respondents **SHALL FILE** an advisory informing the Court, in detail, of the reasons for the IJ's bond hearing decision **no later than November 7, 2025.**

**SIGNED** this **16th** day of **October 2025**.

_____
THE HONORABLE DAVID BRIONES
SENIOR UNITED STATES DISTRICT JUDGE